# Harrison et al. versus Collins.

1. One not personally interfering or giving directions respecting the manner of work, but contracting with a third person to do it, is not responsible for a wrongful or negligent act in the performance of the contract, if the act agreed to be done is legal.

2. If one renders service in the course of an occupation representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished, it is an independent employment.

3. The fact that a contractor is paid by the day does not destroy the independent character of his employment.

4. The owner of a sugar refinery employed a master rigger to remove certain heavy machinery for use therein from a railroad train to their place in the refinery. In the prosecution of the work he opened a coal-hole in the pavement, in front of the refinery, into which to place a beam to secure a purchase for his tackling. After this purpose was accomplished, the beam was removed, and the hole remained opened a few moments, in which interval a lad walked into it and was severely injured. The owner of the refinery did not interfere in any manner with the work, and the entire direction of the same was under the control of the rigger, who was paid by the day. Suit was brought on behalf of the lad against the owner of the refinery: Held, that he was not liable. Held, further, that the owner would not be liable for this unauthorized uncovering of the hole until such time had elapsed, under all the circumstances, that a reasonable and prudent man ought to have discovered its dangerous condition.

January 23d 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county*: Of January Term 1876, No. 223.

Case, by John Collins, by his next friend, Daniel O'Keefe, against Charles C. Harrison, Theodore A. Havemeyer and others, trading as Harrison, Havemeyer & Co.

[Harrison *v.* Collins.]

The *narr.* alleged that the defendants were the owners or occupiers of certain premises on the east side of Water street, below Shippen street, Philadelphia, fronting on a public footway or highway, in which there was a coal-hole opening into the cellar on defendants' premises ; that the defendants, not regarding their duty in the premises, on May 7th 1875, wrongfully and unjustly permitted the coal-hole to be open and uncovered, by means whereof the plaintiff, whilst lawfully passing over the footway, without any negligence on his part, unavoidably fell into the hole, suffered damage to his body, and lost the sight of one eye, &c.   The damages were laid at $5000.

The plea was, "Not guilty."

At the trial, before Elcock, J., it appeared that the defendants were the owners of a lot, and large sugar refinery thereon erected, at Swanson and Almond streets, in the city of Philadelphia.   In May 1875, they had purchased two large iron coolers, weighing from seven to ten tons each, to be used in their business.   They were brought by railroad to the north end of the railroad track on Swanson street, whence it was necessary to move them along the pavement and into the refinery.   The distance they were to be moved was about eighty-eight feet.   The defendants employed one John Connor, a master rigger, to move the coolers from the railroad tracks and place them in position in the refinery.   For this work he was to be paid four dollars per day for himself and for each of the assistant riggers and for the use of his rigging.   When he needed any additional men, he was to have the assistance of some of the men about the refinery.   From the time he commenced until he finished the work, Connor controlled all the men, gave all the orders, and had the sole direction of whatever was done.

Under the sidewalk, in front of the refinery, was a vault for the storage of coke or coal.   This vault had an opening in the sidewalk on Swanson street, constructed in accordance with the requirements of an ordinance of the city, which provides that said opening shall be covered by an iron plate or grating, made of iron bars of at least an inch in thickness.   This opening or hole is twenty inches in diameter, and is securely fastened by a heavy cast-iron cover, weighing about sixty pounds.   At the bottom it was fastened with lock and key.

Connor commenced the work by moving the smaller cooler along Swanson street, resting it partly on the curbstone and partly on the pavement.   In order to do this, he put wooden rollers under the cooler, and fastened ropes to it, and used the ordinary tackle of riggers.   For the purpose of obtaining a purchase, he directed his men to open the coal-hole, and to put a strong piece of timber in it, and across and below the pavement, and fasten their ropes to it.   This they did, and by means of the tackle they drew the cooler as far as they could, with this purchase, to within

[Harrison v. Collins.]

five or six feet of the hole. The cooler was about ten feet long by five feet wide and five feet deep. It was thus drawn to within a few feet of the coal-hole a little before 12 o'clock noon. The rigger then ordered his men to take the tackle from the coal-hole, and pull it around the corner of Bainbridge and Swanson streets, and thus get a new purchase. In doing this, the hole remained open from three to five minutes. In this interval the plaintiff, a boy about thirteen years old, walked into it and was injured.

The main defence was, that the employment of Connor was an independent one, and that consequently the defendants were not responsible for his acts.

The defendants' second point was as follows, to which is appended the answer of the court:—

That if the jury find that the injury to the plaintiff was caused by the negligence of Connor, and his employment was an independent one, the defendants are not liable, and the verdict must be for the defendants.

Ans. "I cannot instruct you in that language. If Connor was simply the servant or agent of the defendants, they are answerable for his negligence. But even if his employment was an independent one, if he used this hole or opening in defendants' sidewalk for his own convenience, by the permission of the defendants, either express or implied, then the defendants would be liable, the care and control of the hole not being incident to his employment. If without their permission, then as a trespasser the defendants would be liable for the acts resulting. If the hole was left open for any time after its use was ended by Connor, then the defendants are liable."

Their third point and the answer of the court were as follows:—

That the verdict must be for the defendants, the uncontradicted evidence in the case showing that Connor's employment was an independent one. The negligence, if any, from which the accident occurred, was during this independent employment.

Ans. "I cannot so charge you, and refer you to my general charge in that regard."

In their general charge, the court, inter alia, said:—

"The defendants say, 'we employed in the moving of these machines a competent rigger, who, with his workmen, was paid $4 per day, who was assisted by our workmen from the factory, but all at the same time under the guidance of Connor, the rigger.'

"I do not think it becomes important in this case to determine whether that was an independent employment within the legal definition or not, whereby the responsibility was shifted from the defendants to Connor, because Connor's undertaking was simply to move and hoist this machinery, and he would be in any event only liable within the scope of his employment.

[Harrison *v.* Collins.]

"If Connor, in his employment, for the mere purpose of convenience, or an easy way of obtaining a purchase for his rigging, used the hole or opening referred to, by express or implied permission of the defendants, then for the time being he became their agent, because the care and control of the hole was not necessarily incident to his employment.

"If he used it without their permission, then he became a wrongdoer, and defendants, not protecting such a species of property as this hole from such acts, would be guilty of negligence, and liable for any injury occurring during the time. But whether the defendants impliedly gave permission, or whether Connor was a trespasser during the time he was using the hole or the opening, the instant that he ceased to use it its control reverted to the defendants, and from that instant they were bound to protect it, there being no undertaking on the part of Connor to see to its subsequent care or management. He who, being the owner of property, seeks to shift the responsibility for its care or management, must show that he has parted with the power or authority over it, or the superior control upon which it falls. If, then, you find that this occurred after the ropes were taken out of the hole, and before the cover was placed upon it, the defendants would be responsible if the plaintiff was otherwise entitled to recover."

The verdict was for the plaintiff for $3000, and after a rule for a new trial had been discharged (Thayer, P. J., dissenting), judgment was entered thereon. The defendants then took this writ, alleging that the court erred in the answer to their second point, in the portions of the charge quoted, and, lastly, in the answer to their third point.

*George Junkin* and *George W. Biddle,* for plaintiffs in error.— In their instructions to the jury, the court below erred, first, in not telling them that, as the uncontradicted evidence showed the rigger's employment to be an independent one, the defendants were not liable for the result of an accident occurring during this independent employment. The evidence clearly demonstrated that the accident was occasioned solely by the acts of Connor and his men. He was employed as a master rigger to do a specific job, over which he had assumed entire control, and in regard to which he gave every direction. He was in no way, directly or indirectly, interfered with, and everything was left to his skill and judgment, untrammelled even by a suggestion. He was clearly a contractor, and not a servant, and his employment an independent one : Pack *v.* Mayor, 8 N. Y. 222; Kelly *v.* Mayor, 11 Id. 432. And the fact that such an employee is paid by the day makes no difference : Corbin *v.* America Mills, 27 Conn. 274; Forsyth *v.* Hooper, 11 Allen 419. The true test as to what is an independent employment is given in Shearman and Redfield on Negligence, sect. 74 :

[Harrison *v.* Collins.]

' Ascertain whether he renders the service in the course of an occupation representing the will of the employer only as to the result of his work, and not as to the means by which it is accomplished." And applying this test to the facts in this case, it will be conclusively demonstrated that Connor's employment was an independent one; that he was in no sense the agent or servant of the defendants, and therefore they are not responsible : Hilliard *v.* Richardson, 3 Gray 349; Barry *v.* City of St. Louis, 17 Mo. 121; Blake *v.* Ferris, 1 Selden 48; Painter *v.* Mayor of Pittsburgh, 10 Wright 221; Potter *v.* Seymour, 4 Bosw. 140, 148; Allen *v.* Willard, 7 P. F. Smith 374; Hunt *v.* Railroad Co., 1 Id. 475; O'Rourke *v.* Hart, 7 Bosw. 511; Vanderpool *v.* Husson, 28 Barb. 196.

The fact that a few of the laborers employed in the refinery assisted in pulling at the ropes does not alter the matter, as they were and became the servants, pro hac vice, of Connor, and acted entirely under his orders. The opening of the coal-hole was not only without the authority, express or implied, of the defendants, but without their knowledge.

The court erred secondly, in assuming throughout that the fact of the coal-hole being opened or uncovered *at all* constituted a *nuisance*, by reason of which a liability was fastened upon the defendants. In other words, a citizen who has a coal-hole in his pavement must have it so constructed that it will be physically impossible for a wrongdoer to open it. It is negligence unless he protects the hole from its being opened by any trespasser. This is novel doctrine, and such as has never been held in this state, or anywhere else, where the privilege of having such a coal-hole is accorded and regulated by law. The right to these vaults under the pavement has been recognised by universal use, as well as by legislation. They are very useful, and add to the value of the property, and unless they are allowed to be opened and used they lose their value.

The court erred thirdly, in assuming, against law and against common experience, that "the instant the rigger ceased to use the coal-hole for the purpose of a purchase, its control reverted to the defendants, and they were bound to protect it." ·

Is it reasonable that an owner of property shall have no time given him to undo the acts of a mere trespasser upon his property? Unless he instantly sets right what a bad man has set wrong, he must be held liable for all that may result from the wrongful act. Surely he is only bound to exercise the care of a prudent, careful man over any of his property. If this new doctrine be correct, then every house-owner must be himself on his pavement, or have some one there, to watch for and undo instantly the wrongful acts of every trespasser.

*Pierce Archer, Jr.*, and *Lewis C. Cassidy*, for defendants in

error.—The unlawful act of opening or leaving open a coal-hole on a public highway, or using it, or permitting or suffering it to be opened and used, for any other purpose than as a coal-hole for the reception of coals, was such omission of his duty to the public as rendered the owner and occupant liable, even though it was opened by one bearing the relation of an independent contractor or technical trespasser : Pickard *v.* Smith, 100 E. C. L. R. 470 ; Whiteley and Wife *v.* Pepper, 36 Law Times Reports 588. To constitute an independent employment, the contractor must be engaged in a lawful work and have exclusive control thereof : Homan *v.* Stanley, 16 P. F. Smith 464 ; Baird *v.* Pettit, 20 Id. 477 ; Reed *v.* City of Allegheny, 2 W. N. C. 189 ; West Chester Borough *v.* Apple, 11 Casey 284.

Even if Connor had been an independent contractor, yet both he and defendants, or either, are liable to the plaintiff for the unlawful act of leaving the coal-hole open on a public highway ; it was a public nuisance : Shearman and Redfield on Negligence, sect. 84 ; McCleary *v.* Kent, 3 Duer 27 ; Ellis *v.* Sheffield Gas Co., 2 Ellis & B. 767 ; Gray *v.* Pullen, 5 Best & S. 970 ; Wiswall *v.* Brinson, 10 Iredell 554 ; Irvine *v.* Wood, 51 N. Y. 224 ; Congreve *v.* Morgan, 18 N. Y. 84.

Mr. Justice MERCUR delivered the opinion of the court, May 6th 1878.

This was an action by the defendant in error to recover damages for injuries which he sustained by falling into a coal-hole of the plaintiffs in error. They were sugar refiners, occupying buildings on Swanson street, in the city of Philadelphia. They purchased two large iron coolers, to use in their business. The coolers were brought by rail to within about one hundred feet of their works. They then employed John Connor, a rigger, to take the coolers from the cars and place them in their building. He was to be paid four dollars per day for his own services, and for each of his three assistant riggers. On each of' these three men he made a profit of fifty cents per day. He was to furnish the ropes, hoisting apparatus, and all the necessary machinery incident to his occupation. Yet for the use of these he appears to have received an additional sum. The distance to move the coolers being so short, he moved them with skids and rollers, over the sidewalk. While so moving them he uncovered the coal-hole, and left it open, by reason of which the defendant was injured. The question presented is, whether the plaintiffs in error are liable for the injury thus sustained.

As one general principle pervades all the assignments, they will be considered together. The learned judge thought it unimportant whether Connor was merely the servant or agent of the plaintiffs, or whether his employment was an independent one; that if he

used the hole by either the express or implied permission of his employers, they were liable; or if he used it without their permission, and as a trespasser, and left it open "for any time," after so using it, they were liable. In this we think there was error. If Connor was their mere agent or servant, they would be liable for his negligent manner of performing the work. Yet, if his employment was an independent one, they are not so liable. This distinction has been rocognised in numerons cases. Among others may be cited Painter v. The Mayor, &c., of Pittsburgh, 10 Wright 213; Hunt v. Pennsylvania Railroad Co., 1 P. F. Smith 475; Allen v. Willard, 7 Id. 374.

It is well settled in England and in this country, that persons not personally interfering or giving directions respecting the manner of the work, but contracting with a third person to do it, are not responsible for a wrongful or negligent act in the performance of the contract, if the act agreed to be done is legal: Gray & Wife v. Hubble & Pullen, Law Jour. Rep., vol. 32, part 8, N. S.; Hilliard v. Richardson, 3 Gray 349; Blake v. Ferris, 1 Selden 48; Painter v. The Mayor, &c.; *supra*. The fact that the contractor is paid by the day does not necessarily destroy the independent character of an employment: Forsyth v. Hooper, 11 Allen 419; Corbin v. America Mills, 27 Conn. 274. If one renders service, in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished, it is an independent employment: Shearman & Redfield on Neg., sec. 74; Pack v. The Mayor, &c., of New York, 4 Selden 432; Barry v. The City of St. Louis, 17 Mo. 121.

In the present case the evidence was most ample to submit to the jury to find that Connor's employment was an independent one. It does not appear that the plaintiffs in error reserved any right to advise or direct as to the manner in which the coolers should be moved, nor that they assumed or exercised any such authority during the progress of the work. It is not pretended that the moving was an unlawful work. As to Connor it was a distinct employment in the line of his occupation. His employers stipulated for the result only. He alone superintended and directed the manner in which his assistant riggers should work. He had the exclusive control and direction of the plaintiffs' men, who assisted him. He testifies that he did the job according to his own views. Under his directions the coal-hole was opened. It is not shown that the plaintiffs in error, or any one acting under their directions, were present, or had knowledge that it was opened. It is not claimed to have been opened by their express authority. How could their permission be implied? We see no necessary connection between the work to be done and the use of this coal-hole in performing it. If the jury should think there was no reasonable presumption that

[Harrison *v.* Collins.]

Connor would use the hole in such a manner as to uncover it, the plaintiffs in error were guilty of no negligence in not stationing a man there to prevent its being opened.

The coal-hole appears to have been in all respects constructed and protected according to the city ordinance. Its cover was of solid cast-iron, weighing about sixty pounds. At the bottom it was securely fastened. Certain it is that the coal-hole was not made nor maintained for any such use as it was subjected to by Connor. If, then, it should be found that his employment was an in-dependent one, and that he had no implied permission to use it in the manner in which he did use it, or if Connor was a trespasser while so using it, the plaintiff would not be liable for an injury sustained by the defendant, on the instant that Connor ceased to use it. While it is true, as the learned judge said, "the instant that he ceased to use it, its control reverted to the" plaintiffs in error; yet it does not follow "from that instant they were bound to protect it." This is imposing too harsh terms on them. If they had no expectation that the hole would be uncovered or thus used, and no knowledge that it was, they should not be held liable until such reasonable time had elapsed, under all the circumstances, that a careful and prudent man ought to have discovered its dangerous condition. If, after such reasonable time had elapsed, and they failed to make the hole secure, they cannot be relieved from the consequences of their own negligence, by showing the previous trespass of Connor. It then follows that the assignments, except the last, are substantially sustained.

Judgment reversed and a *venire facias de novo* awarded.