Tyler et al. *v.* MacFadden Newspapers Corp., Appellant.

Argued September 28, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunning-ham, Baldrige, Stadtfeld and Parker, JJ.

*Thomas Raeburn White,* and with him *Wayland H. Elsbree* of *White, Schnader, Maris and Clapp,* for appellant.   Cited: Connor v. Pennsylvania Railroad Co., 24 Pa. Superior Ct. 241; McColligan v. Pennsylvania Railroad Co., 214 Pa. 229.

*Lynn L. Detweiler* of *Detweiler and Detweiler,* and with him *Matthew K. Stevens,* for appellee.

OPINION BY KELLER, J., November 23, 1932:

This was an action by a ten year old plaintiff and his mother to recover the damages respectively sustained by them because of injuries to the minor, received while riding on the defendant's truck, due to the negligent operation of the truck by defendant's driver.

The negligence of the driver is not disputed on this appeal; although nothing appears in the evidence to show any wanton or intentional injury to the boy by him.   The defense was based on the proposition, specifically averred in the affidavit of defense filed, that the driver of the truck was not the agent or employee of the defendant and that the latter, in consequence, was not liable for his negligence.

The defendant, MacFadden Newspapers Corpora-

tion, is the publisher of The Philadelphia Daily News. The truck on which the boy was riding at the time of the injury had on its side the words 'Philadelphia Daily News.' This might have been sufficient to bring the case within the ruling of the Supreme Court in Holzheimer v. Lit Bros., 262 Pa. 150, 105 Atl. 73, and establish a rebuttable presumption that the truck was being used at the time on the defendant's business. But the plaintiffs did not rest satisfied with this. They offered in evidence the affidavit of defense, which contained the agreement under which the truck was in fact being operated, and if this establishes that the operator of the truck was an independent contractor, engaged in delivering the defendant's papers, there can be no recovery. The plaintiff may in his own case show that the truck was not being operated on the defendant's business: Hartig v. American Ice Co., 290 Pa. 21, 137 Atl. 867, and thus effectually rebut the presumption above referred to.

The agreement contained in the affidavit of defense and offered in evidence was between the defendant and one Morris Rosen. The driver of the truck was Harry Rosen, an employee of Morris Rosen. The court below was under the impression that Morris Rosen was driving the car at the time of the accident. He was not.

The agreement [printed in the reporter's statement] provided for two distinct things: (1) The defendant 'rented' to Morris Rosen two trucks belonging to it, valued at $783.19, which the latter agreed to purchase by paying the agreed price in weekly instalments over a period of twenty-seven weeks. (2) Rosen, the contractor, agreed to operate the trucks, paying chauffeur's salaries, gasoline, repairs and such other supplies as might be required to keep them in first-class operating condition, over the routes and for the delivery of the required [regular?] special and extra editions of the Philadelphia Daily News, for which the defendant was

to pay Rosen $75 per week for the first truck and $65 per week for each additional truck.

We think the first matter covered by the agreement is unimportant here. It makes no difference for our purposes whether the trucks were leased by the defendant to Morris Rosen, or conditionally sold to him by defendant, or whether they had been procured by Rosen in some other way: Luckie v. Diamond Coal Co., 183 Pac. 178 (Cal.). The important matter is whether they were being operated by Morris Rosen as the agent of the defendant and on its behalf, or on his own behalf as an independent contractor, for the delivery of defendant's papers. If the latter, then the fact that the delivery was beneficial to the defendant would not charge it with liability for the negligence of those making such delivery. For example, newspapers are sent by common carriers to many suburban towns and nearby cities. Such delivery is for the benefit of the newspaper in that it is the means of putting the paper into the hands of its subscribers; but no one would think of holding that the negligence of the common carrier in the delivery of the papers was chargeable to the newspaper publisher. The result is no different, if, instead of delivering by common carrier, the delivery is made by private carrier, provided the carrier is acting on his own behalf and not as the agent or representative of the newspaper. The incidental benefit to the newspaper's business resulting from the contract of carriage and delivery is not material in determining the relation between the parties.

The basic question involved in determining whether the relationship of independent contractor or that of master and servant exists is, who has control over the *means* of conducting and performing the work. If the owner, or person for whom the work is done, has the right to select the employees who do the work, the power to remove and discharge them, the right to direct both what work shall be done and the way and manner

in which it shall be done, then the relation of master and servant exists: Eckert v. Merchants Shipbuilding Corp., 280 Pa. 340, 349, 124 Atl. 477; but if he lets out the work to another, reserving no control over the work or workmen, beyond such general supervision as may be necessary for the purpose of ascertaining whether the contractor is carrying out his agreement (Miller v. Merritt, 211 Pa. 127, 60 Atl. 508; Simonton v. Morton, 275 Pa. 562, 567, 119 Atl. 732,), then the relation is not that of master and servant, but of independent contract, and the contractor alone is liable for the negligence of his employees: Smith v. State Workmen's Ins. Fund, 262 Pa. 286, 105 Atl. 90; Kelley v. D. L. & W. Railroad Co., 270 Pa. 426, 113 Atl. 419; Campagna v. Ziskind, 287 Pa. 403, 135 Atl. 124; McGrath v. Penna. Sugar Co., 282 Pa. 265, 127 Atl. 780. Or as held in Smith v. Simmons, 103 Pa. 32, where one who contracts to perform a lawful service for another, is independent of his employer in all that pertains to the execution of the work, and is subordinate only in effecting a result in accordance with the employer's design, he is an independent contractor. This is so whenever one renders service in the course of an occupation, representing the will of his employer only as to the result of his work and not as to the means by which it is accomplished: Harrison v. Collins, 86 Pa. 153; Painter v. The Mayor of Pittsburgh, 46 Pa. 213, 221. In the language of Mr. Justice SCHAFFER, in the very recent case of Eckert v. Merchants Shipbuilding Corp., supra, ''Where the status of one performing an undertaking may not be precisely that of an independent contractor, yet where he hires, pays, discharges and controls the workmen, he will be liable for their torts'' (p. 348).

Ordinarily, draymen, truckmen, carters, etc. are regarded as independent contractors: 65 L. R. A. 468, note to Central Coal & Iron Co. v. Grider, 115 Ky. 745, 74 S. W. 1058. Illustrative cases are found in Foster v. Wadsworth-Howland Co., 168 Ill. 514, 48

N. E. 163; Jahn v. McKnight, 78 S. W. 862 (Ky.); Winters v. American Radiator Co., 128 Minn. 508, 151 N. W. 277; Burns v. Michigan Paint Co., 152 Mich. 613, 116 N. W. 182; Svoboda v. Western Fuel Co., 193 N. W. 406 (Iowa). See also 39 C. J. 1319. "The direction to one engaged in 'general hauling' to haul property to or from a specified place does not change the nature of, or convert a special employment into the general relation of master and servant; a man does not become answerable for the negligence of a taxicab driver, or of a carrier, merely by specifying where he wishes to go or to have his property delivered": Wright v. A. & S. Wilson Co., 83 Pa. Superior Ct. 487, 489 (LINN, J.). Such a contract, just as in the present case, is concerned almost wholly with the doing of work. No materials are to be furnished, as in the case of erecting a building, or constructing public work. See Miller v. Merritt, supra. Hence the means and manner of performing the contract is largely concerned with the workmen or subordinates employed to do it, and where the contractor is not subject to interference from the contractee in the hiring, paying, directing and discharging of his subordinates he operates as an independent contractor and not as a servant.

In the present case the defendant did not hire the driver of the truck; it did not pay him; could not discharge him nor direct him as to the manner in which he should drive the truck. The contractor bought his own oil and gas, could purchase any brand or kind he wanted; made his own repairs; could hire, and discharge his own employees, pay them what he chose and they agreed to; could direct them just how he wanted the work done, and change the directions from time to time provided they did not conflict with the result to be obtained for the defendant under the contract. The latter had no right to interfere in the performance of the contract beyond revoking it if the contractor

failed to do the work under it satisfactorily: Simonton v. Morton, supra.

That the contractor was to be paid by the week, at so much per truck, instead of a lump sum, did not affect the nature of the contract: Harrison v. Collins, 86 Pa. 153, 158; Karl v. Juniata County, 206 Pa. 633, 56 Atl. 78; nor that he worked with, or even superintended, some employees of the defendant: Harrison v. Collins, supra, p. 159).

The case is very similar in its facts to Gall v. Detroit Journal Co., 158 N. W. 36 (Mich.) where a contract very much like the one in suit was made by the Detroit Journal with one Rebtoy for the distribution and delivery of its papers to its subscribers. The Supreme Court of Michigan held that Rebtoy was an independent contractor and that the Journal Company was not liable for the negligence of Rebtoy's employees, saying inter alia: ''Rebtoy did have a contract for a specific piece of work; that is, for the delivery of the papers. And it was none the less specific because the places to which the deliveries were to be made and the persons to whom the papers were to be delivered might change from day to day. The right, on the part of the company, to designate the persons and places was but a right to designate the result to be obtained, and did not give the company any control over the method for obtaining this result. Rebtoy was paid by the week, but so was the contractor in Burns v. Michigan Paint Co., 152 Mich. 613, 116 N. W. 182....... No reason is seen why a man may not agree, as an independent contractor, to deliver all, or part, of the papers printed by a publisher, of the groceries sold by a groceryman, or of the goods sold by a merchant, if the method and means for doing so are left entirely to him without any right of control by the employer.'' See also, Wood v. Cobb, 13 Allen (Mass.) 58; Kueckel v. Ryder, 66 N. Y. Supp. 522, affirmed 62 N. E. 1096, on the opinion of the court below.

We are of opinion that the contract between the defendant company and Morris Rosen constituted the latter an independent contractor. The defendant's reasons for making such a contract are not important. It was unquestionably for a *lawful service*. It is immaterial that one of its reasons may have been to escape just such liability as is sought to be fastened on it in this action: Connor v. Penna. R. Co., 24 Pa. Superior Ct. 241, 245. That case and McColligan v. Penna. R. Co., 214 Pa. 229, 63 Atl. 792, which also dealt with the employment of hansom cab drivers at the Broad Street Station, Philadelphia, are along the same lines as this one. In fact, the control over and directions given the drivers in those cases (See 24 Pa. Superior Ct. 244, 245; 214 Pa. 232, 233), were stronger than the contractor was subject to in this case.

While not considered or passed upon in the court below, there is another reason for holding that the plaintiffs are not entitled to recover in this action.

A review of the record fails to show any evidence disclosing any grant of authority from the defendant, or even from Morris Rosen, to Harry Rosen permitting him to take the minor plaintiff with him either to assist him or as a passenger. The boy testified that "He (Harry Rosen) asked me if I wanted to go with him; if I wanted to do some work for him." In the absence of authority from the employer either to employ the minor plaintiff or carry him as a passenger, he was merely a trespasser.

In a somewhat similar case Mr. Justice Kephart said: "The servant has no right to impose upon his master's onerous liability by holding him responsible for the safe carriage of any person he may see fit to accept as a passenger ...... If there was some risk in riding, the passenger assumed whatever risk there was, as well as that which came from his alighting and leaving the truck ...... The master, short of wantonness,

did not owe him the duty of safe carriage or to see that he safely alighted. The boy's appearance on the truck was a trespass, created by the act of the driver for his own personal pleasure, comfort or convenience, and that of the boy. He continued as a trespasser and the driver's subsequent conduct in negligently starting the truck before the boy was off, was part of the same trespass": Hughes v. Murdoch Storage & Transfer Co., 269 Pa. 222.

We had occasion fully to consider the subject in a case very much like this one, except that there the minor plaintiff sued the distributor of the papers, instead of the publisher, because of injury resulting from the negligence of the former's driver, and we held that in the absence of some wilful and intentional act on the part of the employee, the master was not liable for injuries received by the boy while riding as a trespasser on the truck. In other words, to make the master liable to a trespasser for injuries received while riding on a truck they must have been wantonly and intentionally inflicted. See Collins v. Rosenberg, 106 Pa. Superior Ct. 269, 161 Atl. 580.

As we said at the outset of this opinion, there is no evidence which justifies a finding of any wilful, wanton or intentional conduct on the part of Harry Rosen, the driver for Morris Rosen, which brought about the injury to the boy. His negligence merely consisted in passing another truck at a street intersection.

On both grounds, then, we hold that judgment against the defendant was not justified, and that judgment non obstante veredicto should be entered in favor of the defendant.

The assignments of error are sustained and judgment is reversed and entered in each appeal in favor of the defendant non obstante veredicto.