Phipps, Appellant, *v.* Greensboro Gas Co. et al.

Argued April 17, 1933.

Be-fore TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD and JAMES, JJ.

*John 'H. Wilson,* and with him *John L. Wilson* and *Painter & Painter,* for appellant.—A claimant should not be placed in the position of an independent contractor when a reasonable view of the evidence warrants a finding that he is an employee: Gailey v. State Workmen's Insurance Fund, 286 Pa. 311; Campagna v. Zuskind, 287 Pa. 403.

*Ralph H. Behney,* and with him *F. Clair Ross, A. L. Edwards,* Deputy Attorney General, and *Wm. A. Schnader,* Attorney General, for appellees, cited: Smith v. State Workmen's Insurance Fund, 262 Pa. 286; Kelley v. D. L. & W. R. R. Co., 270 Pa. 428.

OPINION BY KELLER, J., July 14, 1933:

This is a workmen's compensation case. The question at issue is whether claimant, at the time he was hurt, was an employee of the Greensboro Gas Company or an independent contractor. The referee and, on appeal, the board, found he was the latter. This conclusion rests largely on the construction to be given the written contract between the parties. This is a matter of law, which is reviewable by the courts: Kelley v. D. L. & W. R. Co., 270 Pa. 426, 428, 113 Atl. 419.

The claimant was and is a partner in the firm of Swartzlander & Phipps, who are oil and gas well drilling contractors.

They made a written contract with the defendant company for the drilling of an oil and gas well, No. 886, known as No. 1 well on the farm of John Demaske, in Nicholson Township, Fayette County, at the contract price of $1.90 per foot, the well to be drilled 2700 feet below the Pittsburgh vein of coal, unless a paying well was developed before that depth, with provisions for the size of hole, casing, etc. The contract provided that the contractors should pay all claims for injuries to employes, as required by any compensation law in force or that might be enacted, and that the company should not be liable in any way for the same; and that the contractors should give proper notice to all employes personally and by posting, as required by law, and comply with every requirement necessary to keep the company free from all liability for compensation arising from any injury to any em-

ploye. It also provided that the contractors were to inspect the rig, conductor and casing to be furnished by the company and "the same are to be used by contractor at contractor's own risk and responsibility, no liability attaching to company on account of any accident occurring by reason of the use of the same." There is no question that the contract made Swartzlander & Phipps independent contractors in the drilling of the well. The fact that the contractors were to be paid so much per foot for drilling the well, or, by the day, for extra work, as hereinafter referred to, did not affect the nature of the contract: Harrison v. Collins, 86 Pa. 153, 158; Karl v. Juniata County, 206 Pa. 633, 56 Atl. 78; Tyler v. McFadden Newspapers Corp., 107 Pa. Superior Ct. 166, 174, 163 Atl. 79; nor was it affected by the fact that the contractors themselves worked on the job: Harrison v. Collins, supra, p. 158; Karl v. Juniata County, supra, p. 640.

The contract, as a part of its terms, made express provision for extra work. It provided that after the drilling was completed "contractor shall leave all his material, machinery, tools, equipment and appliances at the well for at least ten (10) days' time if required by company necessary for any of the said tests, so that contractor may be ready to drill deeper or do any other work which company may require in connection with this contract or for the shooting of the well; no charge to be made for the said machinery and equipment during the ten (10) days' tests. If contractor leaves his said machinery and equipment at the well for a longer period than ten (10) days following such test, contractor shall not be paid for the use of the same unless contractor shall demand and receive a written order from the manager or general superintendent of company, and a hiring agreement be made. The prices to be paid for the hiring as aforesaid of said ma-

chinery and equipment, including the contractor's workmen necessary to operate the same, also use of water plant line and privileges and fuel for a twelve hour day, is fixed at $30 per day, and for a twenty-four hour day at $55 per day, and the price to be paid for the hiring without workmen to be at one-half the above quoted rate. Contractor shall be responsible at all times for the safekeeping of material, machinery, tools, equipment and appliances, and shall furnish the necessary fuel used during such extra time.''

After the well was drilled to the required depth, the defendant, under the direction of its field foreman, began tubing the well. After a certain amount of tubing had been put in, the field foreman decided that it was not the proper tubing, and undertook to remove or "pull" it, and in so doing the tubing parted. Efforts were made to "fish" it out, which were not successful and the contractors were then called upon, in this situation, to use their equipment and two of their men, under the arrangement provided in the contract, the contractors being paid $30 a day of twelve hours for the use of the equipment, including the two men necessary to operate the same. For a while the contractors furnished two of their tool dressers, McGarvey and McIlvain, but, later, they, themselves, operated the equipment. While so engaged, the contractors, at the suggestion of the field foreman, drove to Masontown to procure a necessary tool to be used in the fishing process, and while on the road, in their own car, driven by Swartzlander, the car skidded and Phipps was hurt. The referee found that Swartzlander and Phipps were experts at this sort of work and in a better position to know what sort of tool was necessary to fish out the tubing than the field foreman whose experience and activities had been along other lines.

The referee concluded: "It is our opinion that the contract entered into by and between the parties con-

templated a possible fishing job or plugging of the hole and that the calling of these men back on this fishing job and their return and taking up the work is just such an arrangement as is contemplated by the original agreement and that the clause covering this extra work and the work which they were doing was all a part of the original agreement in this case, which is identified in the records as defendant's exhibit No. 1. We are of the opinion, therefore, that the claimant J. M. Phipps on January 1, 1931, at the time he received the injuries complained of was acting in the capacity of an independent contractor and that he was not such an employe of the defendant as is contemplated by Article III of the Workmen's Compensation Act of 1915 and its amendments.'' The board approved this, adding that the trip of the contractors to secure the proper ''fishing'' tool was not such a digression from the work under the contract as to change the relationship. ''Having procured the necessary tool, it was their intention to return to the well for further 'fishing' which would have brought them fully within the scope of the contract once more.'' The court below, in its opinion, after referring to the break or drop in the tubing, pertinently said: ''It was just such an emergency as was contemplated under the agreement. The contractors and their employes were skilled workmen and able to take care of such a situation and, as contractors and skilled workmen, they came back under the terms of the contract to remove the tubing from the plugged hole. It is clearly apparent that the tools and outfit were kept on the premises for the purpose of meeting any contingency that might arise so that the well could be put into production or drilled deeper, as it might be deemed necessary. They were not called back to tube the well, which was part of the duties of the gas company. It happens that Mr. Phipps was a member of

the contracting firm, but he also was individually an employe of the firm when he worked on the well. Had one of his paid employes been called back, the paid employe would be under his control and jurisdiction and would be entitled to compensation from the contractor. It is clear, therefore, that Phipps and his partner were on an expedition to get the necessary tool, which they were required to furnish under the contract in order to complete this fishing job, and, as such, they would be working as contractors and not as employes of the gas company.'' We think the conclusion of the referee, adopted by the board and the court below, is warranted from a proper construction of the written contract, in connection with the facts of the case.

The case is not unlike contractors engaged in erecting a building, under a contract which makes provision for extra work. If, after the building is completed as per contract, the contractors are called on to do extra work as contemplated in the agreement, they still have the status of independent contractors and not of employes. Had McGarvey or McIlvain been injured while working at this extra work, they would have been employes of the contractors, not of the company; the situation is not altered by the fact that the contractors took upon themselves personally the work which their employes had been doing. The gas company was given no right to employ or discharge the workmen or agents whom the contractors might engage or appoint to do this work; the contractors hired and discharged their own employes; could pay them what they chose and the employes agreed to; and had control and direction of how their employes did their work.

The case, in our opinion, comes within the principles enunciated in Smith v. State Workmen's Ins. Fund, 262 Pa. 286, 291, 105 Atl. 90; Kelley v. D. L. & W. R.

388

Co., supra, pp. 429, 430; Brooks v. Buckley & Banks, 291 Pa. 1, 139 Atl. 379; McDonald v. Levinson Steel Co., 302 Pa. 287, 153 Atl. 424; Tyler v. McFadden Newspaper Corp., supra, pp. 172, 173, and kindred cases. The control exercised by the defendant company was no more than that of seeing that the contractors performed their work properly and that the desired result was accomplished, not of directing the manner and means of its accomplishment, and was not inconsistent with that measure of oversight which an owner may properly retain as respects the work of an independent contractor.

The assignments of error are overruled and the judgment of the court below is affirmed.

Judge PARKER took no part in the hearing or decision of this case.