## Huck-Gerhardt Company, Inc. *v.* Davies et al. (et al., Appellant).

Argued October 19, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER and RHODES, JJ. Judgment, as modified,

*Benjamin Ludlow,* for appellant.

*Francis J. Morrissey, Jr.,* with him *John P. Boland,*
for appellee.

OPINION BY RHODES, J., January 31, 1939:
The basic question involved in this appeal is whether
the evidence warrants the inference drawn by the trial
judge, sitting without a jury, that defendant James P.
Davies was an independent contractor employed by
appellant garnishee.

Plaintiff had a judgment against James P. Davies
and Jeannette L. Davies. An attachment sur judgment
was issued and served on George Royle & Company as
garnishee on December 20, 1933. Answer was filed to
the interrogatories admitting that garnishee owed de-

fendant James P. Davies as wages in his own right the sum of $37.88, and as agent the sum of $70.27 for wages of others. The trial judge, sitting without a jury, found for plaintiff and against garnishee in the sum of $314.20. Garnishee's motions for a new trial and for judgment n.o.v. were refused. From the judgment entered on the finding garnishee has appealed.

Appellant operated a textile mill in Philadelphia containing 44 looms. These looms had been devoted to manufacturing jacquard. James P. Davies, one of the defendants, had also been in the textile business manufacturing what is known as "frieze," which appellant had frequently bought from him. Due to business difficulties Davies and his associates gave up their plant, and he came to appellant's mill about a year and a half prior to the issuance of the attachment. Davies first operated one loom in appellant's plant making frieze. Subsequently several more looms were found necessary for this work, and Davies' two sons and his brother-in-law then operated the additional frieze looms. As the demand decreased the sons and the brother-in-law were dropped, and were rehired again as the business required. Davies controlled the hiring and rehiring. There is no doubt that if Davies was not an independent contractor he was in charge as foreman of the frieze department which appellant had established in its plant. Prior to December 20, 1933, when the attachment was served on appellant, payment was never made individually to those who operated the frieze looms. Each week one check was drawn by appellant to the order of "James P. Davies" or to the order of "James P. Davies and Sons." Over the distribution of the proceeds of this check appellant exercised no control. All other employees in the mill were paid individually by separate checks. The amount of the weekly check to Davies was determined by the yardage produced during the week on the frieze looms. Davies neither purchased the raw materials nor sold to appellant the finished product.

He did not lease the looms or any part of the mill. Compensation was determined solely by the quantity produced. This was likewise true of the other employees on the jacquard looms, numbering about 40; each weaver's work card was checked weekly for the yardage produced, and his pay was accordingly. It was testified that Davies received, in addition to his duties as weaver, compensation for repairing the frieze looms; that he received an extra mill per pick based upon his own yardage no matter which of the four looms he repaired.

On December 22, 1933, two days after the attachment, appellant paid Davies, his sons, and his brother-in-law by separate checks for the week ending December 20th, and thereafter this method was followed. The yardage of each was taken to the shipping room where it was totaled, and the result sent each week to the office. On the basis of the yardage cards thus received the wages of those operating the frieze looms, as well as the other employees in the mill, were computed and checks drawn to each.

At the trial plaintiff called an investigator for an audit and inspection company, who testified that on December 14, 1933, he called at appellant's mill and interviewed George Royle, Jr., who was then vice-president of appellant company. He testified, in effect, that Royle told him that Davies was working there on a contract basis; that appellant paid Davies so much a yard for the finished product; that Davies in turn paid his own men—the rate he did not know. That any such interview took place was denied by Royle. As stated by the court below in its opinion dismissing appellant's motions for a new trial and for judgment n.o.v., the testimony of this witness was "vague in spots." Notwithstanding its contradictory phases and possible vagueness, the weight to be given to it was for the trial judge in his capacity as finder of the facts. The credibility of the witnesses was for him.

George Royle, Jr., who was president of appellant company at the time of trial, and vice-president at the time of the service of the attachment, was called by plaintiff as on cross-examination. He testified as to the relationship existing between appellant and Davies, and the nature of his employment. He testified that there was no contractual arrangment between Davies and appellant; that Davies and those who operated frieze looms were paid in the same manner as any other weaver in appellant's mill, except that Davies received an extra mill per pick for acting as a loom fixer; that the only difference between these four employees and the other forty employees was that one check was issued to Davies for the wages of the four, or as many as were engaged in the operation of the frieze looms; that the reason for one check was to keep this work separate; that Davies was considered as the foreman of the frieze department; that no looms were leased to Davies; that the weaving rates fixed by appellant for weavers on the frieze looms were the same for each with the exception of the extra mill per pick on Davies' own production for acting as loom fixer for these looms.

"The general rule is thus stated—where a person lets out work to another, the contractee reserving no control over the work or workmen, the relation of contractor and contractee exists, and not that of master and servant. Wood on Master and Servant, 2d Ed., 593; 26 Cyc. 1084, or, as stated by Shearman & Redfield on Neg., Sec. 74, 'if one renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished, it is an independent employment' ": *Smith v. State Workmen's Ins. Fund*, 262 Pa. 286, at page 291, 105 A. 90, at page 91. See *Kelley v. Delaware, Lackawanna & Western Railroad Co.*, 270 Pa. 426, 113 A. 419; *Tyler et al. v. MacFadden Newspapers Corp.*, 107 Pa. Superior Ct. 166, 172, 163 A. 79. We can readily understand such a working arrangement

between appellant and Davies as would make the latter an independent contractor. A number of looms in a textile mill may readily be segregated and given over to one individual to operate, not as an employee but as an independent contractor who furnishes the labor only, payment being on the basis of so much per yard produced by such looms. The hiring of the employees would be entirely within the control and discretion of the contractor; he would pay his employees either on a yardage or fixed basis from the amount which he received from the mill determined by the total production of those looms. The contractor would retain the difference. Under such an arrangement he would be "independent of his employer in all that pertains to the execution of the work, and ...... subordinate only in effecting a result in accordance with the employer's design": *Tyler et al. v. MacFadden Newspapers Corp.*, supra, 107 Pa. Superior Ct. 166, at page 172, 163 A. 79, at page 81, citing *Smith v. Simmons*, 103 Pa. 32. Appellant's books were not offered in evidence. They should have reflected whether the weekly payments to Davies were charged to contract production, or whether Davies and the other weavers on the frieze looms were carried as appellant's employees, and the payments to them through Davies made a part of the weekly payroll. In the instant case we think that it was a permissive inference for the trial judge to draw that the arrangement between appellant and Davies up to December 20, 1933, was that of an independent contractor. Although the method of payment is only one element in determining whether one acting for another is a servant or an independent contractor, we think, in the present case, it is a vital factor. See Restatement, Agency, § 220. Davies may have paid his sons and brother-in-law a lesser rate per pick than appellant paid to Davies. Prior to the attachment the amount of the check to Davies was determined by the yardage shown on a master card. Subsequent to the attachment the master card was still utilized to show

the total production of the frieze department, but the individual cards of each weaver were turned in to the office in accordance with the uniform practice in appellant's mill, and each of the frieze weavers was then paid individually by check at the established rate. The master card was still used to check with the total of the individual cards. The foreman of such a department naturally hires, discharges, and controls the workmen, being responsible only to his employer for the efficient operation and production of the department. But the method of payment to Davies, together with the testimony of the investigator, would support a finding by a jury or by the trial judge, sitting without a jury, that Davies was an independent contractor, and ha·l his own arrangement as to the payment of his workmen. If Davies was in fact hired by appellant as foreman of the frieze department, with power to hire, discharge, and control the weavers in that departmenc, the method of payment of wages would not change the nature of the relationship between Davies and appellant. See *Burns et al. v. Elliott-Lewis Electrical Co.*, 118 Pa. Superior Ct. 243, 250, 179 A. 47. But the trial judge was not obliged to accept this as the true state of facts up to the time of the issuing of the attachment. The subsequent method of payment whereby all the workmen, including Davies, in the frieze department were placed in the same relationship to appellant as the other employees of appellant's mill established a situation which permits of no other conclusion, in our judgment, than that Davies was then without question an employee of appellant. After December 20, 1933, Davies and any other employees of that department were individually paid on a weekly basis for the yardage which each produced at a fixed rate and in, the same manner as all other weavers in appellant's mill. To December 20, 1933, the relationship between Davies and appellant may have been that of an independent contractor or that of master and

servant. Thereafter the facts, in our opinion, permit of only one interpretation. The judgment in the amount of $314.20 cannot be sustained. How this amount was arrived at is not clear to us from the record. The judgment must be reduced to $108.15, the amount due from appellant to Davies on December 20, 1933. See *Hoekstra v. Hopkins,* 87 Pa. Superior Ct. 15.

The judgment of the court below is modified by reducing it to the sum of $108.15, with interest from May 11, 1938.

As so modified, judgment is affirmed.