## Bair v. Newgeon et al.

*William Taylor, Jr.*, for plaintiff.

*Geary & Rankin*, for defendant and garnishee.

MACDADE, J., July 12, 1940—We have for consideration a petition and rule thereon to show cause why a writ of attachment execution issued at the instance of plaintiff should not be dissolved. Should the rule under all the circumstances and the factual situation as developed be made absolute or discharged?

### History of the case

During the summer of 1936, defendant, being obliged to sell the home owned by him and his wife in Wallingford, engaged plaintiff, a licensed real estate broker of this county, to procure a purchaser. Accordingly, he introduced the defendant to Colonel and Mrs. Tidball, who were then desirous of purchasing a home, and succeeded in inducing them to make an offer of $12,000 for the house in question. Defendant, however, insisted on receiving the sum of $13,500. While matters were still in this way, plaintiff went to Cleveland, Ohio, to attend a convention of the American Legion. Taking advantage of his absence, defendant went to the Tidballs and entered into an agreement of sale for a price midway between the two previous figures.

Upon his return home plaintiff learned what had happened and made demand upon defendant for his commission. As this was refused, he brought suit. Defendant vigorously resisted the action and alleged that the contract of agency had been abandoned by plaintiff prior to the direct consummation of the sale. The cause came on for trial before the undersigned, and the jury rendered a verdict in the amount of $658.25 for plaintiff. Defendant then moved for a new trial and judgment non obstante veredicto.

Following an argument upon these motions before the court in banc, the court (MacDade, J.) rendered an opinion wherein the law applicable to the facts was discussed and showed that the case had been fully and fairly submitted to the jury, which had accepted plaintiff's version of what had occurred. Although this opinion was of considerable interest to the real estate men, it unfortunately has not been printed in the Delaware County Reports as yet.

On April 5, 1940, a writ of attachment execution was issued, summoning John A. Shedwick as garnishee, in his various capacities. A salvo of pleadings then followed. In his answer to the interrogatories, the garnishee admitted that in his official capacity as executor of the estate of Rose Dever, deceased, he had retained defendant as attorney to settle the said estate of Rose Dever, deceased, and that he had agreed to pay him $750 for his professional service. He added that $300 had already been paid prior to the service of the writ, but subsequently asserted that nothing is due under the contract until the estate has been fully administered and adjudicated. Apparently he must consider the payment of $300 as a gratuity, as nothing, according to him, was then owing, and consequently the full sum of $750 is still outstanding; however, the garnishee's contention in this respect is erroneous. Certainly the estate is liable to a fair reasonable charge for professional services and the executor may make advances thereon from time to time.

Defendant then filed a petition for a rule to show cause why $300 should not be paid over to him, as his statutory exemption. Subsequently he filed still another petition asking for a rule on plaintiff to show cause why attachment execution should not be dissolved and set aside.

He averred that the "said counsel fee . . . not being due and payable until after approval thereof by the Orphans' Court of Philadelphia County, and after its adjudication of the garnishee's account as executor as aforesaid has been absolutely confirmed", is exempt from attachment, under the proviso of the Act of April 15, 1845, P. L. 459, as being a wage or salary.

In reply, plaintiff answers that a contract to pay a sum certain upon the accomplishment of a specified result, to be brought about by the efforts of defendant in advising, supervising, and managing the settlement of the estate, is not exempted.

Hence, the following may be stated according to these contentions as the

### Question of law involved

Where an attorney has, for a lump sum of money, agreed to advise, supervise, and direct an executor in the settlement of an estate and to handle all necessary preparation of papers and court work, to the end that the estate may be lawfully and properly administered and the said fiduciary discharged, and said sum is not due and payable until after the accomplishment of said result, is the aforesaid sum of money liable to attachment?

### Discussion

Assuming that the sum payable to defendant by the garnishee (executor) for his legal services were subject to attachment under the law of Pennsylvania, yet if the same were to be considered salary or wages and therefore exempt from attachment under section 5 of the Act of 1845, supra, defendant has been afforded an opportunity herein to claim his exemption in the attachment proceeding in

this court "by rule to dissolve or other appropriate action" as resorted to in the instant case. See Bell v. Roberts, 112 F. (2) 585.

In our judgment an issue of fact might well be said to have been raised by these pleadings (including the answers filed), but plaintiff is willing to have these matters disposed of on petition and answer, inasmuch as virtually all that could be developed at a trial is set forth therein, irrespective of any findings of fact, for the controversy ultimately turns upon the law applicable thereto. We shall proceed to finally dispose of the novel problem— rarely raised heretofore in our jurisprudence, perhaps because a writ of attachment execution was unknown to the common law. The right to issue such a writ seems to be statutory; it was created in our law by the Act of June 16, 1836, P. L. 755. Subsequently the Act of July 27, 1842, P. L. 436, authorized an attachment by foreign attachment of legacies, devises, and interests, and this was extended to writs of attachment execution by the Act of April 13, 1843, P. L. 233, sec. 10.

In passing upon the Act of 1836, Mr. Justice Barnes, speaking for the Supreme Court in Williams v. Ricca et al., 324 Pa. 33, 35, said:

"Being in derogation of the common law, this enactment creating a new process in aid of execution, by the familiar principle of statutory construction, must be construed strictly. Except so far as the use of this writ has been extended by later statutes . . . only such things as are enumerated in the 35th section of the Act are subject to attachment execution in the hands of a garnishee."

In Mulligan's Estate, 157 Pa. 98 (1893), a creditor of the executor petitioned the Orphans' Court of Philadelphia County to award to him part of the executor's commissions in payment of his claim. This was refused and the creditor appealed. In affirming the orphans' court, speaking through Mr. Justice McCollum, the court said (p. 101):

"This commission is unlike a legacy or distributive share which, by virtue of the act of July 27, 1842, P. L. 436, may be attached before any settlement of the estate. It is not in any sense an interest in the estate, and there is no fixed standard by which it can be measured. Whether it shall be allowed or refused is a question which usually arises on the claim of the executor or administrator on final settlement, and is affected by various circumstances and considerations not applicable to the claim of the heir or legatee. . . . It is the intervention of the creditors of the executor, for the purpose of appropriating compensation for his services, that is objectionable, and, speaking for myself, against the policy of the law. It matters not to the estate or the parties in interest therein whether such intervention is founded upon an assignment for the benefit of creditors or upon an attachment. In either case it 'makes the main interests of the estate subservient to collateral claims,' and constitutes an obstruction to the due and orderly execution of the trust."

The same reasoning was applied as in Adams' Appeal, 47 Pa. 94, when it was said: "It is not in any sense an interest in the estate", and the statute contains no authority to attach it.

In Adams' Appeal, supra, the court said: "The only question in these appeals is, whether the commissions of an executor may be attached in the hands of his co-executor and himself. We think not; the policy of the law as well as the inconvenience attending it forbid it. It would be incalculably mischievous if the interests of estates and of legatees and distributees were to be retarded and imperilled by the attacks of creditors upon the accounts of the executors or administrators, in order to reach the commissions. It would make the main interests of the estate subservient to collateral claims; and its effect would be to diminish the interest of the executors or administrators, in making speedy and effectual efforts to settle the estates, by taking away his compensation. . . .

We look upon an executor or administrator as exercising a trust which should not be jeoparded or prejudiced by collateral and minor interests. He resembles a sheriff, prothonotary, or treasurer in respect to his duties towards the trusts he is executing, and the same general rule of policy applies to him."

Is there any analogy between an executor's commission and an attorney's fee which would make the rulings aforesaid equally applicable to fees of attorneys? Bouvier's Law Dictionary, page 1198, says, under the subject of Fee, it is "A reward or wages given to one for the execution of his office, or for professional services, as those of a counsellor or physician. Cowell." Certainly a fee is a recompense to the officer (a lawyer being a court officer) for his services, which are usually, in the administration of estates, legal advice. The true rule is that legal advice is proper to direct the course of executors, and where they must bring suit to recover part of the estate, or defend suits brought against them, counsel must be employed, and where they are employed to obtain what is honestly supposed to be the rights of the estate, the estates must pay their reasonable fees: Sterrett's Appeal, 2 P. & W. 419; Worrell's Appeal, 23 Pa. 44; Stockwell v. Delaware County, 27 Del. Co., 559, 563; Meyers, Admr., etc., v. The Mayor, etc., 69 Hun. 291; Musser et al., Admrs., v. Good et al., 11 S. & R. 247; Bouvier, p. 3417.

In Murray's Execs. v. Sharp, 72 Pa. 360, 362, it was said by Mr. Justice Agnew: ". . . an executor is not liable for costs . . . except when some fault is personally imputable to him. . . . In view of the legislation since 1836, and the current of decisions upon the non-liability of executors and administrators *personally* for costs, we are of opinion that the legislature did not intend to revive the qualification as to the party taking out the rule of reference, in the 31st section of the Act of 1836. An opposite intention would often compel the executor or administrator to pay the costs out of his own pocket, or else to sacrifice the interests of his trust by refusing to appeal." Cal-

lender's Admr. v. The Keystone Mutual Life Ins. Co., 23 Pa. 471, was followed.

The general rule is that a trust estate must bear the expense of its administration: Peoples-Pittsburgh Trust Co. v. Pittsburgh United Corp. et al., 334 Pa. 107, 112.

The allowance of counsel fees rests generally in the judgment of the court of first instance and its decision will not be interfered with except for palpable error: Rambo's Estate, 327 Pa. 258.

In a suit against a committee of a lunatic for counsel fees, it was held that the estate of the lunatic and not the committee was liable: Wier v. Myers, 34 Pa. 377.

Hence there is no personal or individual responsibility of the executor in the instant case. In his fiduciary capacity he was correct in engaging the professional service of defendant as a lawyer, and the auditing judge when he files an accounting of his administration will fix a reasonable fee therefor. The orphans' court has not as yet spoken in the matter. It may be that it will not find the fee of $750 reasonable. It may be considerably reduced—say, to less than $300—and with this thought, it would seem that the ruling in Adams' Appeal, supra, should prevail in that the administrator of the estate "should not be jeoparded or prejudiced by collateral and minor interests."

The executor's attorney stands in the shoes of the executor as far as the conduct of the proceedings for the settlement of the estate is concerned. The responsibility for speeding or retarding the settlement of the estate is his, and the orphans' court controls his fee as well as the executor's commissions. Therefore the rule stated in Adams' Appeal, supra, applies with equal force to his counsel fee as to the executor's commissions.

The money and assets of the estate are in the hands of the executor as an officer of the orphans' court, and, as said in Adams' Appeal, supra, he "resembles a sheriff, prothonotary, or treasurer", and therefore funds in his hands are not attachable without statutory authority, he being a public officer and protected from garnishment by

the policy of the law. "It is a general rule of course that funds in custodia legis . . . are not attachable. This is for reasons of policy. The judicial process must not be interfered with. The cases determining whether funds were or were not in custodia legis do not draw any particularly clear line. . . . Adams' Appeal, 47 Pa., 94, is important and in point. An executor's commissions were held not attachable. The court thought that if such commisssions were attachable the executor would not be inclined to complete his administration and thus the court's officer would not finish his duty. The parallel is plain."

See also Muench v. White Hantz & Co., U. S. Dist. Ct., E. D. of Pa., no. 8403 of 1935, Dickinson, J.

From what has been said above, and the fact that the orphans' court has exclusive jurisdiction and control over the settlement and distribution of the assets of the Dever estate, the attachment is ineffective and should be set aside.

The attachment execution herein was evidently issued under the Act of 1845, sec. 5, which provides: "That the wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer."

This exemption cannot be waived: Morris Box Board Co. v. Rossiter, 30 Pa. Superior Ct. 23.

It would seem that counsel fees are within the protection of the said Act of 1845. This provision has been construed to include architect's compensation: Central Trust Co. v. Rieger et al., 25 Dist. R. 1074; fees: Davis & Co., to use, etc., v. Trobridge, 8 Just. 25; commissions: Danziger v. Ferber, 272 Pa. 193; Hamberger v. Marcus, 157 Pa. 133.

The rule of construction adopted in the foregoing cases is that the act protects and exempts all compensation for personal services, whether mental or manual, in which no profit is included. Whether the compensation is called "wages" or "salary" is immaterial. It was intended to cover amounts due for mental or manual labor: Mc-

Closkey et al. v. Northdale Woolen Mills et al., 296 Pa. 265, 269; The Ellis B. & L. Assn. v. Gross et al., 36 D. & C. 258 (1939).

A fee is a wage and comes within the protection of the Act of 1845, whether mental or manual, notwithstanding plaintiff states: "One must contemplate with some amusement the chagrin and exasperation which the defendant's proposition (fees are wages) would have occasioned the members of the Pennsylvania Bar in the year of 1845, composed as it then was of the members of the austere patrician families which dominated the social, legal, industrial, and political life of the Commonwealth. Their indignation would know no bounds at the mere thought that this statute, intended as it obviously was for the protection of the working classes, applied equally to the fee of a gentleman and a lawyer."

In the case at bar it is, at least, admitted that a balance of $450 is due and payable to defendant by the said executor and its payment need only receive approval from the auditing judge as to its reasonableness.

We think, therefore, that this attorney's fee cannot be attached in the hands of the executor while the estate is still unadministered in the orphans' court, which court has not passed upon the reasonableness of the charge, for the policy of the law forbids it, as shown in Mulligan's Estate, supra, and Adams' Appeal, supra.

Plaintiff cites us the case of Huck-Gerhardt Co., Inc., v. Davies et al., 134 Pa. Superior Ct. 430, and Schwacke v. Langton et al., 12 Phila. 402. We have examined the same and we believe they do not decide the instant question—shall such fee be considered as wages within the provisions of the Act of 1845.

In Huck-Gerhardt Co., Inc., v. Davies et al., supra, defendant was engaged to operate frieze looms on a yardage basis, and he employed two or three other men to assist him. Each week one check was drawn by the employer to the order of defendant, and over the distribution of the proceeds of this check the employer exercised no control.

All other employes in the mill were paid individually by separate checks. The amount of the weekly check to defendant was determined by the yardage produced during the week on the frieze looms. That was an entirely different case from the instant case. The other case, Schwacke v. Langton et al., supra, was decided on similar grounds, and plaintiff should have included in his quotation from Judge Ludlow's opinion the next two lines: "In the present case defendant carried on a private school as a business enterprise and employed assistants." That case also is not analogous, and does not support plaintiff's contention.

We regret that we cannot permit the writ to stand, for we are not in favor of the proposition that in order to secure a lawyer's services it is necessary that he be given a special protection against his creditors, of which this plaintiff is one; and in all decency and sense of justice he is entitled to have his claim paid by the defendant, who is an officer of this court, and whose integrity should promptly actuate him to pay his honest debts, to which this court has already determined plaintiff is entitled by due process of law.

The old name for the Supreme Court of France was La Salle des Pas Perdus, or the hall of wasted time. Public interest is better served by giving actual relief to litigants who come into court than by giving them mere paper remedies. When faced with the determination of a doubtful question, it would seem that public good would best be served by seeking constructions and interpretations which will give actual and not mere theoretical redress. This court has already declared plaintiff to be entitled to payment, and he is once more in court in an effort to collect on his judgment.

It is suggested that, so far as the law will permit, the court ought to resolve all close questions in such a manner that the time and money spent in prosecuting this case may not be just so much wasted time and expense.

While the law is with defendant we are deprived of the satisfaction that justice herein is the handmaiden thereof.

*Order*

And, now, July 12, 1940, the above motion of defendant, William R. Newgeon, to show cause why the writ of attachment execution issued by plaintiff, Robert T. Bair, against him et al., should not be dissolved and set aside, coming on to be heard by the court in banc, after due consideration, the court doth order and decree that the said defendant's rule to show cause why the writ of attachment execution issued by plaintiff, Robert T. Bair, against him and others should not be dissolved and set aside be and is hereby made absolute sec. reg. et sec. leg.; and the prothonotary be and is hereby ordered and directed to enter judgment against plaintiff, Robert T. Bair, and in favor of defendant, William R. Newgeon, and John A. Shedwick, individually and as executor of the will of Rose Dever, deceased, and in any other capacity, garnishee, in accordance with the above opinion and the reasons therein more fully set forth.