## Karl, Appellant, *v.* Juniata County.

*Practice, C. P.—Appeals—Charge—Assignments of error.*

A judgment on a verdict will not be reversed because of a detached
portion of the charge alleged as error, where it appears that the portion
of the charge complained of, taken in connection with instruction imme-
diately preceding it, and other portions of the charge, could not have
possibly been misunderstood by the jury.

*Charge—Independent contractor—Illustration.*

Where the court has given the jury a correct definition of an independ-
ent contractor, it can in nowise confuse or mislead the jury by giving an
illustration as follows: " If the commissioners employ a tinner to roof

this courthouse making no provision as to how the old tin is to be removed or the new tin raised up and placed, and the commissioners are not present directing the operation or the manner of its performance and have relinquished their power over the work or manner of its performance and an accident befall an employee or other person, the county would in nowise be responsible for any act, negligent or otherwise, by the employer whereby some one is injured."

*Charge—Points—Improper points.*

A point is properly refused which assumes that the jury could have found facts of which there was no proof, and asks them to give undue effect to other facts.

*Contract—Independent contractor.*

The fact that the person alleged to be an independent contractor was employed at $2.00 per day and directed to employ other hands at $1.50 per day, is not necessarily inconsistent with the independent character of his employment.

*Negligence—County—Repair of county bridge.*

Where a county is about to repair a county bridge, it is not negligence per se to regularly and carefully pile plank on the bridge, leaving ample room for two two-horse teams to pass immediately opposite the pile, and leaving the pile there from the beginning of May 29, to remain over Decoration Day until the following morning May 31, if the plank is necessary for the repairs in hand.

*Negligence—Counties—Bridge—Defective eyesight—Charge.*

In an action against a county to recover damages for personal injuries sustained on a county bridge, where there is evidence that the eyesight of plantiff was defective, *it is not improper for the court to affirm a point* as follows : " That if the jury believe from the evidence that the eyesight of the plaintiff was impaired on the night of the accident, the law required a degree of care upon his part beyond the usual and ordinary, proportioned to the degree of his impairment of vision, and if he failed to exercise the proper degree of care under the circumstances, he was *guilty of contributory negligence and the verdict must be for the defendant.*"

Argued May 27, 1903.   Appeal, No. 27, Jan. T., 1903, by plantiff from judgment of C. P. Perry Co., Aug. T., 1901, No. 20, on verdict for defendant in case of John Karl v. Juniata County.   Before MITCHELL, DEAN, FELL, BROWN and POTTER, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before SHULL, P. J.

At the trial it appeared that about nine o'clock on the evening of May 30, 1900, plaintiff drove upon a county bridge over

Juniata river connecting the boroughs of Patterson and Mifflintown, and while he was on the bridge struck a pile of plank with the front wheel of his buggy, resulting in the injuries for which this suit was brought.

The court charged in part as follows:

You will observe that the physicians called upon the part of the plaintiff and defendant are rather far apart in their conclusion. This is a case in which when the doctors disagree you must decide who was in position best to know the facts through the early history of the diseases complained of in this case, to whom could he easiest feign, if he were disposed to feign, for both sides agree that it is of the character of diseases (so far as the principal feature among the things complained of in this case is concerned) in which patients malinger or simulate or feign an illness.

[The question now therefore naturally arises from all of the evidence, from what point of time does the sclerosis of arteries and heart trouble, its resultant cause, date, if before, then the accident could not be the cause and your only inquiry would be as to the extent of the exaggeration thereof and the pain at his shoulder which is assigned to anthritis occasioned by accident or from rheumatism aggravated somewhat by the injury.] [15]

[The next legal question to which I wish to direct your attention is the matter of independent employment, by which I mean was this repair carried on under the direction, control or supervision of the county commissioners, or was it done by James J. Horning, an independent contractor? Where a man employs another to work under his direction he is responsible for his acts. The employee becomes his agent or servant and the responsibility rests with the master who controls. On the other hand where one employs a mechanic or other person to perform a piece of work and does not undertake to direct how or in what manner it is to be done, but vests in the mechanic power to perform the work as he pleases and in his own way without direction, restraint or control of the superior or master, the employer is not responsible for the employee's negligence, if he be negligent.

This is an important problem in the consideration of this case, for much hangs thereby; perhaps a safe rule to govern

your finding would be this which is laid down by our Supreme
Court, 86 Pa. 153 : " If one renders service in the course of an
occupation representing the will of his employer, only as to the
results of his work, and not as to the means by which it is ac-
complished, it is an independent employment," and this rule
prevails regardless of whether the employment is under a con-
tract sum or by the day.    If the commissioners employ a tin-
ner to roof this courthouse making no provision as to how the
old tin is to be removed or the new tin raised up and placed, and
the Commissioners are not present directing the operation or
the manner of its performance and have relinquished their power
over the work or manner of its performance and an accident
befall an employee or other person, the county of Perry would in
nowise be responsible for any act, negligent or otherwise, by
the employer, whereby some one is injured.    This may seem to
be a harsh rule that counties, townships, cities or boroughs
may thus unload responsibilities on to some other persons who
may be financially irresponsible, but such we say to you is the
rule of law.    The evidence you have and you will apply the
rule of law thereto and if under the evidence you find that
James J. Horning was under independent employment, this
plaintiff cannot recover, and your verdict would be for the de-
fendant.] [16]

Plaintiff presented, among others, the following point :

3. If the jury find that the county commissioners were ac-
customed to employ James J. Horning to make the ordinary
repairs to said bridge ; that on May 26, 1900, prior to the ac-
cident, they employed him at the usual wages of $2.00 per day
to put new plank in the bridge, directing him to employ other
hands at $1.50 per day each ; that they instructed him to take
out worn-out plank put in new ones until the supply of plank
which commissioners then had on hand was exhausted ; that
they directed him to purchase the necessary spikes from Guss &
Sieber ; and paid them for a hammer and hammer handles which
he purchased from them for use on the repairs and charged to the
county ; that they did not place the manner of the work en-
tirely in the hands of Horning and beyond their own control,
but could, if they had seen fit, have personally supervised and
directed the work, without changing the terms of the contract ;
that no time was fixed for the completion of the work ; that Horn-

ing and the men with him, at the direction or suggestion of the commissioners' clerk, cleared up the bridge on Tuesday night and did not work the following day, which was Decoration Day; that when the commissioners' supply of plank was exhausted they paid to Horning $2.00 per day for his labor and $1.50 per day for the other men, except the drayman, whom they paid directly; that Horning's bill when presented for payment was for so many days for himself at $2.00 per day and for the others at $1.50 and that the county commissioners in their annual statement took credit for the bill in an item reading, " J. J. Horning, labor; $16.50; " the jury may properly find that Horning was a servant or employee of the county and not an independent contractor.  *Answer :* This is refused. [17]

Defendant presented these points:

4. The evidence in this case showing that at a point near the centre of the bridge during the repairing of the floor of the driveway, eighteen wide, plank were piled at the side of the driveway so as to extend a width of two plank, from eighteen inches to two feet into the driveway, that if the jury believe said plank were necessary for the repairs in hand and were piled regularly and carefully, leaving ample room for two two-horse teams to pass immediately opposite the pile of plank, from these facts negligence would not be imputed to the defendant county.  *Answer :* This we affirm. [18]

5. The evidence in this case showing that at a point near the centre of the bridge, during the work of repairing the driveway, eighteen feet wide, plank were piled at the side of the drive-way so as to extend the width of two plank, from eighteen inches to two feet, into the driveway, that if the jury believe the said plank were necessary for the repairs in hand and were piled regularly and carefully, leaving ample room for two two-horse teams to pass immediately opposite the pile of plank and that it was not reasonably convenient and practicable to remove said plank off of said bridge, then the piling of said plank in said manner at time of quitting work on evening of May 29, 1900, and leaving them so remain over Decoration Day, May 30, 1900, and until the time of again commencing work of repair on morning of May 31, 1900, would not constitute negligence of itself.  *Answer :* This is affirmed. [19]

8. That if the jury believe from the evidence that the eye-sight of John Karl, the plaintiff, was impaired on the night

of the accident, the law required a degree of care upon his p rt beyond the usual and ordinary, proportioned to the degree of his impairment of visior and if he failed to exercise the prc er degree of care under the circumstances he was guilty of c n-tributory negligence and the verdict must be for the defenda it. *Answer :* This is affirmed. [20]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1–14) various rulings on evidence; (15–20) above instructions, quoting them; (21) that the charge was unfair to the plaintiff.

*James M. Barnett,* of *Barnett & Son,* with him *Chas B. Craw-ford,* for appellant.

*J. Howard Neely,* with him *Wilberforce Schweyer,* county solicitor, and *W. N. Seibert,* for appellee.

OPINION BY MR. JUSTICE BROWN, July 9, 1903 :

The first fourteen assignments of error in this case question the correctness of the trial judge's rulings in the admission, rejection and striking out of the evidence.   We have examined each with care, but from none of them does it appear that sub-stantial error was committed.   All are overruled without com-ment, for no one of them requires from us a discussion of the rules of evidence or calls for our reasons in holding that they were not violated in the rulings complained of.

The brief extract from the charge which is the subject of the fifteenth assignment, standing alone, might justify the appel-lant's contention that the court had "ignored entirely the plaintiff's theory of the nature and cause of the injuries com-plained of, the theory presented being that of the defendant, viz : that the plaintiff's physical and mental troubles were due to sclerosis of the arteries and to heart trouble ; " but, if read in connection with what immediately precedes it and other portions of the charge, it is manifest that what the court in-tended to say to the jury, and what they must have understood as having been said to them, was, that, if the plaintiff was suf-fering simply from sclerosis of the arteries and heart trouble, which had existed before the accident, then the only inquiry

would be as to the extent of its exaggeration of them. This was manifestly correct. Immediately before using the language objected to, the learned trial judge had called attention to the disagreement of the doctors as to what was the real cause of the physical troubles of which the plaintiff was complaining, and, in other portions of his charge, he had specifically referred to the testimony in support of plaintiff's theory that he was suffering from injuries caused by the accident. The doctors called by the plaintiff testified that he was suffering from traumatic neurosis, attributable to the accident; those called by the defendant said his troubles were sclerosis of the arteries and heart trouble, with which he had been affected before the accident. It is not possible that the jury could have understood the court, from what is embraced in the fifteenth assignment, as saying that the defendant's theory as to the cause of plaintiff's trouble was the true one, and the assignment complaining of this is overruled. It is perfectly clear that the learned judge was calling attention, in the first portion of the extract from his charge, simply to the defendant's theory of what was the matter with the plaintiff.

No exception is taken to the court's definition of an independent contractor. On the contrary, the appellant admits that he finds no fault with it, but insists that the average juryman could not understand it and that the illustration was misleading. In this we cannot concur, for it is not conceivable that the average juror could be so stupid as not to be able to comprehend the court's very clear definition of an independent contractor, or that the apt illustration used could have had any other effect than to make it perfectly plain what the court meant by the words "independent contractor."

Plaintiff's eighth point, as a whole, could not have been affirmed. It assumed that the jury could have found facts of which there was no proof, and it asked them to give undue effect to others. There was no testimony, by way of illustration, that the board of county commissioners, which had employed Horning to make the repairs on the bridge at the time of the accident, had ever employed him before; and yet the only question was as to the character of the employment in this particular instance. The character of his employment, or the number of times he had been employed by former

boards, was not in the case and could have thrown no light on the character of his employment to repair the bridge in May, 1900. Again, that he was employed at $2.00 per day and directed to employ other hands at $1.50 was not necessarily inconsistent with the independent character of his employment: Harrison v. Collins, 86 Pa. 153; and, from the court's affirmative answers to plaintiff's fourth and eighth points, the jury could have found what was asked for in the third. The sixteenth and seventeenth assignments are not sustained.

What the court said in its answers to defendant's fourth and fifth points was simply that it was not negligence per se to regularly and carefully pile the planks, leaving ample room for two two-horse teams to pass immediately opposite the pile, and leaving them there from the evening of May 29, 1900, to remain over Decoration Day until the following morning—May 31—if the said planks were necessary for the repairs in hand; for, as was said of the repair or construction of a highway in Keeley v. Shanley, 140 Pa. 213, in such a case "there must necessarily be inequalities, heaps of stone, and other materials upon the ground necessary for such operations."

As there was some testimony relating to the defective eyesight of the appellant, the twentieth assignment is overruled and, in passing to the twenty-first and last, we need only say that, taking the charge in connection with the answers of the court to plaintiff's first, second, fourth, fifth, sixth, seventh, eighth and tenth points, it is not so far open to the exception taken to it as to call for a reversal of the judgment.

Judgment affirmed.