E. E. KEITH *vs.* WORCESTER AND BLACKSTONE VALLEY STREET RAILWAY COMPANY.

SAME *vs.* INHABITANTS OF MILLBURY.

Worcester. October 1, 1907. — November 26, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Way,* Public. *Negligence,* In use of highway, Due care of plaintiff.

Pedestrians have a right to travel anywhere upon a highway and are not confined in their rights to specially prepared crosswalks.

In actions by the administrator of the estate of a woman respectively against a street railway company and a town for personal injuries to the plaintiff's intestate caused by her stepping between the curbstone of a sidewalk and a pile of rails, improperly left so as to obstruct the highway, when she was following her husband and her sister in haste to take a street car for which they had been waiting, it appeared that the intestate was nearsighted, and the defendants

asked the presiding judge to rule that " if the plaintiff's intestate had defective eyesight, she should take greater care in walking the streets than one of good eyesight, and if she failed to use this greater degree of care, the verdict must be for the defendant." The judge refused to make this ruling, and instructed the jury, in substance, that the plaintiff must show that she was exercising the degree of care that a reasonably prudent and careful person, acting prudently and carefully at the time, should have exercised under all the circumstances, including not only the external circumstances but also her personal peculiarities as they were shown to exist. *Held,* that the instruction requested by the defendants was refused properly, because it asked for the ordering of a verdict upon a single phase of the testimony which was not necessarily decisive, *and also,* because the standard of care established by the law is what an ordinarily prudent and cautious person would do under given conditions, a physical deficiency or infirmity, when it exists, being one of the conditions.

At the trial of an action for personal injuries caused to the plaintiff by her falling upon some street railway rails piled in a street beside the curbing, it appeared that the plaintiff was so nearsighted that she could not recognize a friend at a distance of more than twelve feet, and that, just previous to the accident, which occurred at half past two o'clock in the afternoon, she and her husband and her sister were in a store purchasing street car tickets, that the husband, seeing the car approaching, rushed out to stop it, and the plaintiff's sister and, closely behind her, the plaintiff followed him ; that the car stopped in front of the store and at one side of a crosswalk, that the sister, not using the crosswalk, went from the store across the pile of rails into the street with safety, but that the plaintiff, following closely and not seeing the pile of rails, stepped between them and the curbing and was injured. *Held,* that there was evidence warranting a finding that the plaintiff did not assume the risk of injury by not using the crosswalk, and that she was in the exercise of due care.

TWO ACTIONS OF TORT for personal injuries received by the plaintiff's intestate caused by her falling when stepping across street railway rails which were piled by the defendant street railway company on the highway next to the curbing, and were allowed by the street railway company and the defendant town to remain there, and which, it was alleged, constituted an obstruction of the highway. Writs in the Superior Court for the county of Worcester dated May 26, 1903.

At the trial, which was before *Wait,* J., it appeared that plaintiff's intestate, her husband and her sister were in a store purchasing street car tickets and waiting for the car. Immediately to the left as one looked outward from the store was a crosswalk. There were street railway rails piled next the curb in front of the store, and the evidence was conflicting as to whether they extended over the crosswalk and as to whether they were piled properly. The husband, seeing the car approaching, " rushed out of " the " store, jumped across the rails,"

and stopped the car directly in front of the store.    The sister
followed him, stepping over the rails in front of the store and to
the left of the crosswalk, and the plaintiff's intestate, following
her closely, stepped between the rails and the curbing and fell.
She died before the trial, but witnesses testified that she had
stated "I did not see the rails and did not know they were
there." "I made a misstep and fell over the rails."

The accident happened between half past one and half past
two o'clock in the afternoon.    The plaintiff's intestate was near-
sighted and could not recognize a friend at a distance of more
than ten or twelve feet.

The following requests for rulings by the defendants were re-
fused by the presiding judge subject to their exception:

1. If the plaintiff's intestate by the exercise of ordinary care
and diligence might have seen and appreciated the obvious dan-
ger of attempting to cross the rails, then she was not in the ex-
ercise of due care and cannot recover.

2. If the plaintiff's intestate voluntarily attempted to cross
over from the sidewalk to the car track at a place which by the
exercise of ordinary care a person in the exercise of ordinary
prudence might have known to be somewhat dangerous, which
she might easily have avoided, that is conclusive evidence of
want of due care.

3. If the rails did not create an obstruction across that por-
tion of the street designed for use by travellers on foot, then the
plaintiff's intestate, in attempting to cross the street at any other
point, assumed the risk of an injury resulting from so doing.

4. If the plaintiff's intestate had defective eyesight, she should
take greater care in walking the street than one of good eyesight,
and if she failed to use this greater degree of care, the verdict
must be for the defendant.

In the charge to the jury, the presiding judge stated: "The
plaintiff contends and has got to show by a fair preponderance
of the evidence that Mrs. Keith was injured, and that she was
injured while she was using . . . a degree of care that a reason-
ably prudent and careful person, acting prudently and carefully
at the time, would have exercised and should have exercised in
your judgment under all the circumstances then surrounding
Mrs. Keith.    That means not only external circumstances, that

means not only the way in which the rails were placed, the location of the car, the necessity of action on her part, but it means also with reference to her personal peculiarities as they were shown to exist upon the stand.   For instance, the conduct of a perfectly sound and healthy person may be properly regarded as one thing, when the same conduct on the part of a diseased or infirm person might be regarded as something very different.

"What might be in your judgment perfectly reasonable and proper and careful on the part of a sound person might be regarded fairly by you as improper and careless on the part of an infirm person.

"So, in this case, while I cannot instruct you as a matter of law that Mrs. Keith, if you find her to be near-sighted, was bound to use a higher degree of care than a person not near-sighted, I have got to leave it to you as a matter of fact whether a near-sighted person would not, in order to be careful, have to exercise a higher degree of care than a person not near-sighted.   In other words, I have got to leave it to you to determine whether or not a near-sighted person is using due care if he or she under the particular circumstances acts exactly as a person who was not near-sighted would have done.   In other words, it is a matter of fact for you to determine whether Mrs. Keith was called on to do differently from a person in full possession of eyesight rather than as a matter of law for me to direct you in regard to it."

The jury found for the plaintiff in both cases.

*E. H. Vaughan,* (*R. T. Esty* with him,) for the defendants.

*J. A. Thayer,* for the plaintiff.

RUGG, J.   The evidence of due care on the part of the plaintiff's intestate is inconsiderable, but not so slight as to warrant the court in pronouncing it insufficient as matter of law.   Although the accident occurred in daylight and the obstruction could have been seen, if the traveller had looked, such circumstances are not necessarily decisive.   *Fuller* v. *Hyde Park,* 162 Mass. 51.   Her husband had run out of a store in the effort to stop an electric car, which both, together with a companion, desired to board and were hastening to reach.   These occurrences may have diverted her attention from the surface of the street.   The obstructions were temporary in character and not a part of the permanent constructions within the street, as in

*Raymond* v. *Lowell*, 6 Cush. 524, and they were not such as one ordinarily encounters in travelling upon a public way. *Woods* v. *Boston*, 121 Mass. 337. *Flynn* v. *Watertown*, 173 Mass. 108. *Slee* v. *Lawrence*, 162 Mass. 405. *Lamb* v. *Worcester*, 177 Mass. 82. If she was going from the sidewalk to the crosswalk, there was reason for her to expect an unobstructed pathway, while if she was about to step upon that part of the street wrought and used particularly for carriages, this fact does not preclude recovery, as she had a right to travel anywhere upon the street. Pedestrians are not confined in their rights to specially prepared crosswalks. Sometimes failure to see and avoid a danger in the street may occur under such circumstances as inevitably to indicate a failure to exercise reasonable prudence to protect one's self from peril, *Gilman* v. *Deerfield*, 15 Gray, 577, *Wilson* v. *Charlestown*, 8 Allen, 137, *Raymond* v. *Lowell*, 6 Cush. 524, but ordinarily there are present such diverting incidents as to make it a question of fact.

The defendant asked the court to rule that if the person injured " had defective eyesight, she should take greater care in walking the street than one of good sight, and if she failed to use this greater degree of care the verdict must be for the defendant." This request properly was refused, for the reason that it directed a verdict upon a single phase of the testimony, which was not necessarily decisive. In this respect the prayer differs vitally from the one which in *Winn* v. *Lowell*, 1 Allen, 177, this court held should have been given. We see no reason for modifying the decision in *Winn* v. *Lowell*, nor is it inconsistent with subsequent cases. The standard of care established by the law is what the ordinarily prudent and cautious person would do to protect himself under given conditions. There is no higher or different standard for one who is aged, feeble, blind, halt, deaf or otherwise impaired in capacity, than for one in perfect physical condition. It has frequently, in recent as well as earlier cases, been said, in referring to one under some impediment, that greater caution or increased circumspection may be required in view of these adverse conditions. See, for example, *Winn* v. *Lowell*, 1 Allen, 177 ; *Hall* v. *West End Street Railway*, 168 Mass. 461 ; *Hilborn* v. *Boston & Northern Street Railway*, 191 Mass. 14 ; *Vecchioni* v. *New York Central & Hudson*

*River Railroad,* 191 Mass. 9; *Hawes* v. *Boston Elevated Railway,* 192 Mass. 324; *Hamilton* v. *Boston & Northern Street Railway,* 193 Mass. 324.   These expressions mean nothing more than that a person so afflicted must put forth a greater degree of effort than one not acting under any disabilities, in order to attain that standard of care which the law has established for everybody.   When looked at from one standpoint, it is incorrect to say that a blind person must exercise a higher degree of care than one whose sight is perfect, but in another aspect, a blind person may be obliged to take precautions, practise vigilance and sharpen other senses, unnecessary for one of clear vision, in order to attain that degree of care which the law requires. It may depend in some slight degree upon how the description of duty begins, where the emphasis may fall at a given moment, but when the whole proposition is stated, the rights of the parties are as fully protected in the one way as in the other.   It is perhaps more logical to say that the plaintiff is bound to use ordinary care, and that in passing upon what ordinary care demands, due consideration should be given to blindness or other infirmities.   This was the course pursued by the Superior Court. *Neff* v. *Wellesley,* 148 Mass. 487.   *Smith* v. *Wildes,* 143 Mass. 556. But it is also correct to say that in the exercise of common prudence one of defective eyesight must usually as matter of general knowledge take more care and employ keener watchfulness in walking upon the streets and avoiding obstructions than the same person with good eyesight, in order to reach the standard established by the law for all persons alike, whether they be weak or strong, sound or deficient.

*Exceptions overruled in each case.*