Opinion by
 

 Hirt, J.,
 

 Plaintiff, while engaged in a house to house canvass as a salesman of small articles, was injured in falling into an open trench in the west sidewalk of North Fifth Street in the City of Philadelphia. Defendant Sneller, a plumber, under contract to make a sewer connection with one of the houses on the street, had entered into an agreement with defendant Lomastro under which the latter did the necessary digging. A section of the concrete sidewalk had been removed and Lomastro’s men were in the trench at the time of plaintiff’s injury. The trench then extended from the curb across the sidewalk, three or four feet wide, and had been dug to a depth of seven or eight feet. The earth from the excavation had been thrown upon the sidewalk along both sides of the trench. Plaintiff was walking northwardly on the sidewalk. On the far side of the trench as he approached it, there was a barricade but along the side nearest him there was only the pile of excavated material between him and the trench, about two feet high according to the only testimony on the subject. Plaintiff, because of defective eyesight, did not see the pile of earth and (had. no notice that it was there until he
 
 *233
 
 felt it under bis feet as lie walked upon it. The loose material slipped from under Mm causing Mm to lose his footing and lie fell into the trench. The jury found in favor of plaintiff against both defendants and judgment was entered on the verdict. Defendant Sneller alone appealed.
 

 The evidence, in the light of the verdict, is sufficient to establish negligence from the absence of a barricade along the south side of the trench. But it is not necessary for us to decide whether Lomastro was an independent contractor and as such alone responsible for thé negligence, as Sneller contends, or whether the negligence in failing to properly guard the open ditch is chargeable to both of the defendants. Sympathetic as we are to the plaintiff in his effort to make a living in spite of his physical handicap, we think it clear that he did not present a case free from contributory negligence and is barred from recovery on that ground. This question is raised by the refusal of the lower court to enter judgment for defendants n.o.v.
 

 There is no doubt as to the degree of impairment of plaintiff’s vision. He could perceive light and, under favorable conditions, objects, but could not distinguish them. His sight was so impaired that his reference to himself in his statement of claim as a “blind person” is an accurate appraisal, for all practical purposes, of his ability to see. ■ He was somewhat familiar with the neighborhood and he managed to go about without an attendant, guided by the sky line of the buildings and was able to keep on the sidewalk by means of the poles and trees along the curb or hedges marking the property lines. These, under favorable light conditions, he was able to see dimly. When on the witness stand on the trial of this case, however, he could not see the trial judge nor an examiner who wás within five feet, of him nor the foreman of the jury six feet away.
 

 
 *234
 
 Describing what occurred just before his injury, plaintiff said: “I was walking along very carefully there; there was a hedge and of course some trees that I use as markers, and I felt a break in the paving, and felt some dirt, and my foot started to go down a little bit and then gave way and I could not hold my balance and fell in there. I didn’t get directly into the hole but stepped on the edge of the dirt embankment there, and that gave away and I went in.” He did not carry a cane and, because he was unable to see, did not have notice of the break in the pavement, the pile of earth on the sidewalk, nor the open trench in front of him. The injury occurred in the early afternoon of July 1, 1940, a bright summer day. But for his blindness he also would have seen a barricade along the north side of the trench.
 

 Under somewhat similar circumstances, recovery was denied a blind plaintiff, who fell into an open cellarway extending into the sidewalk, in
 
 Fraser, Appellant, v. Freeman, 87
 
 Pa. Superior Ct. 454, in which Judge Porter said: “The law requires a degree of care upon the part of one whose eye-sight is impaired proportioned to the degree of his impairment of vision. He is bound to use the care which would be exercised by an ordinary prudent person, and in passing upon the question of his negligence due consideration should be given to blindness or other infirmities. In the exercise of common prudence one of defective eye-sight must usually, as a matter of general knowledge, take more care and employ keener watchfulness in walking upon the streets and avoiding obstructions; in order to reach the standard established by law for all persons alike, whether they be sound or deficient. The statement that a blind or deaf man is bound to a higher degree of caution than a normal person does not mean that there is imposed upon him a higher standard of duty, but rather that in order to measure up to the ordinary standard
 
 *235
 
 he must the more vigilantly exercise caution through other senses and other means, in order to compensate for the loss or impairment of those senses in which he is defective;
 
 Karl v. Juniata County,
 
 206 Pa. 633;
 
 Flynn v. Railways Co.,
 
 234 Pa. 335;
 
 Krenn v. Pittsburgh, C., C. & St. L. Ry. Co.,
 
 259 Pa. 443;
 
 Keith v. Worcester,
 
 196 Mass. 478.”
 

 The present appeal is ruled by the Fraser case. It is not negligence for a blind person to walk unattended upon the sidewalks of a city but, in so doing there is a heavy burden upon him; he must conform with the standard of care “established by law for all persons alike whether they be sound or deficient.” Plaintiff’s conduct failed to meet that standard. The fact that plaintiff did not anticipate the existence of an unguarded ditch, in itself, does not charge him with negligence. But it is common knowledge, chargeable to plaintiff, that obstructions and defects of one kind or another are not uncommon in the sidewalks of a city, any one of which may be the source of injury to the blind. Plaintiff’s vision was so defective that he could not depend upon it to warn him of a dangerous condition immediately in front of him. A cane, the blind man’s “long arm” is a poor substitute for sight but can be made useful in determining whether the road before him is clear. It is especially serviceable on a hard surface pavement. Its skillful use in this case, in all probability, would have warned plaintiff that a section of the concrete pavement had been removed, or that the excavated material had been thrown upon the walk, in time to avoid falling into the trench. A blind man may not rely wholly upon his other senses to warn him of danger but must use the devices usually employed, to compensate for his blindness. Only by so doing can he go about with comparative safety to himself.
 

 Judgment reversed and directed to bo eptoiod. for defendant appellant n.o.y.