## Smith, Appellant, v. Sneller et al.

Argued May 12, 1942. Before Schaffer, C. J.;
Maxey, Drew, Linn, Stern, Patterson and Parker, JJ.

*Frank J. Eustace, Jr.,* with him *Francis M. Mc-
Adams,* of *McAdams, Eustace & McAdams,* and *Ray-
mond A. Speiser,* for appellant.

*Richard A. Smith, Louis Wagner* and *Thomas J.
Clary,* for appellee, were not heard.

Opinion by Mr. Justice Drew, May 25, 1942:

This is an action in trespass in which plaintiff re-
covered a verdict and judgment. On appeal, the Superior
Court reversed the judgment on the ground that plaintiff
was guilty of contributory negligence, and entered judg-
ment n. o. v. for defendant Sneller, he alone having ap-
pealed. This appeal was then specially allowed.

The opinion of the learned Superior Court, written
by Judge Hirt, reported at 147 Pa. Superior Ct. 231,
accurately states the facts as follows: "Plaintiff, while
engaged in a house to house canvass as a salesman of
small articles, was injured in falling into an open trench
in the west sidewalk of North Fifth Street in the City of
Philadelphia. Defendant Sneller, a plumber, under con-
tract to make a sewer connection with one of the houses
on the street, had entered into an agreement with de-
fendant Lomastro under which the latter did the neces-

sary digging. A section of the concrete sidewalk had been removed and Lomastro's men were in the trench at the time of plaintiff's injury. The trench then extended from the curb across the sidewalk, three or four feet wide, and had been dug to a depth of seven or eight feet. The earth from the excavation had been thrown upon the sidewalk along both sides of the trench. Plaintiff was walking northwardly on the sidewalk. On the far side of the trench as he approached it, there was a barricade but along the side nearest him there was only the pile of excavated material between him and the trench, about two feet high according to the only testimony on the subject. Plaintiff, because of defective eyesight, did not see the pile of earth and had no notice that it was there until he felt it under his feet as he walked upon it. The loose material slipped from under him causing him to lose his footing and he fell into the trench."

The opinion of the Superior Court continues: "Sympathetic as we are to the plaintiff in his effort to make a living in spite of his physical handicap, we think it clear that he did not present a case free from contributory negligence . . . There is no doubt as to the degree of impairment of plaintiff's vision. He could perceive light and, under favorable conditions, objects, but could not distinguish them. His sight was so impaired that his reference to himself in his statement of claim as a 'blind person' is an accurate appraisal, for all practical purposes, of his ability to see. He was somewhat familiar with the neighborhood and he managed to go about without an attendant, guided by the sky line of the buildings and was able to keep on the sidewalk by means of the poles and trees along the curb or hedges marking the property lines. These, under favorable light conditions, he was able to see dimly. When on the witness stand on the trial of this case, however, he could not see the trial judge nor an examiner who was within five feet of him nor the foreman of the jury six feet away.

"Describing what occurred just before his injury, plaintiff said: 'I was walking along very carefully

there; there was a hedge and of course some trees that I use as markers, and I felt a break in the paving, and felt some dirt, and my foot started to go down a little bit and then gave way and I could not hold my balance and fell in there. I didn't get directly into the hole but stepped on the edge of the dirt embankment there, and that gave away and I went in.' He did not carry a cane and, because he was unable to see, did not have notice of the break in the pavement, the pile of earth on the sidewalk, nor the open trench in front of him. The injury occurred in the early afternoon of July 1, 1940, a bright summer day. But for his blindness he also would have seen a barricade along the north side of the trench."

The Superior Court said further: "Under somewhat similar circumstances, recovery was denied a blind plaintiff, who fell into an open cellarway extending into the sidewalk, in *Fraser, Appellant, v. Freeman,* 87 Pa. Superior Ct. 454, in which Judge PORTER said: 'The law requires a degree of care upon the part of one whose eye-sight is impaired proportioned to the degree of his impairment of vision. He is bound to use the care which would be exercised by an ordinary prudent person, and in passing upon the question of his negligence due consideration should be given to blindness or other infirmities. In the exercise of common prudence one of defective eye-sight must usually, as a matter of general knowledge, take more care and employ keener watchfulness in walking upon the streets and avoiding obstructions; in order to reach the standard established by law for all persons alike, whether they be sound or deficient. The statement that a blind or deaf man is bound to a higher degree of caution than a normal person does not mean that there is imposed upon him a higher standard of duty, but rather that in order to measure up to the ordinary standard he must the more vigilantly exercise caution through other senses and other means, in order to compensate for the loss or impairment of those senses in which he is defective; *Karl v. Juniata County,* 206 Pa. 633; *Flynn*

*v. Railway Co.,* 234 Pa. 335; *Krenn v. Pittsburgh, C., C. & St. L. Ry. Co.,* 259 Pa. 443; *Keith v. Worcester,* 196 Mass. 478.' "

We cannot escape the conclusion of the Superior Court that the instant case is ruled by the Fraser case. While it is not negligence per se for a blind person to go unattended upon the sidewalk of a city, he does so at great risk and must always have in mind his own unfortunate disadvantage and do what a reasonably prudent person in his situation would do to ward off danger and prevent an accident. The fact that plaintiff did not anticipate the existence of the ditch across the sidewalk, in itself, does not charge him with negligence. But, it is common knowledge, chargeable to plaintiff, that obstructions and defects are not uncommon in the sidewalks of a city, any one of which may be a source of injury to the blind. Plaintiff's vision was so defective that he could not see a dangerous condition immediately in front of him. In such circumstances he was bound to take precautions which one not so afflicted need not take. In the exercise of due care for his own safety it was his duty to use one of the common, well-known compensatory devices for the blind, such as a cane, a "seeing-eye" dog, or a companion. These are a poor substitute for sight, but any one of them would probably have been sufficient to prevent this accident. Plaintiff's conduct was not equal to the degree of care required of him. The Superior Court very properly said: "A blind man may not rely wholly upon his other senses to warn him of danger but must use the devices usually employed, to compensate for his blindness. Only by so doing can he go about with comparative safety to himself." We are in accord with that learned court, that plaintiff was guilty of contributory negligence as a matter of law, and we must, therefore, affirm the judgment.

Judgment affirmed.