**William J. POYNER, Appellant,**

v.

**Helen LOFTUS, et al., Appellees.**

No. 95–CV–1551.

District of Columbia Court of Appeals.

Argued March 31, 1997.
Decided May 8, 1997.

Andrea L. Koyner, Arlington, VA, with whom Judy L. Feinberg was on the brief, for appellant.

William J. Carter, Washington, DC, with whom Clifton B. Welch was on the brief, for appellees.

Before FERREN and SCHWELB, Associate Judges, and MACK, Senior Judge.

SCHWELB, Associate Judge:

This action for personal injuries was brought by William J. Poyner, who is legally blind, after he fell from an elevated walkway. The trial judge granted summary judgment

in favor of the defendants, concluding that Mr. Poyner was contributorily negligent as a matter of law. On appeal, Mr. Poyner contends that, in light of his handicap, a genuine issue of material fact existed as to whether he exercised reasonable care, and that the entry of summary judgment was therefore erroneous. We affirm.

## I.

The essential evidentiary facts are undisputed. Mr. Poyner suffers from glaucoma and retrobulbar neuritis. He testified that he is able to see approximately six to eight feet in front of him. Notwithstanding his handicap, Mr. Poyner does not use a cane or a seeing eye dog in pursuing his daily activities.

On August 24, 1993, Mr. Poyner was proceeding from his home to Parklane Cleaners, a dry cleaning establishment located on the west side of the 4300 block of Connecticut Avenue, N.W. in Washington, D.C. The entrance to Parklane Cleaners is adjacent to an inclined platform which is located approximately four feet above street level. Mr. Poyner testified that he had walked by the area on three or four previous occasions, and that he was aware of the general layout. He stated that there were bushes along the edge of the platform, and that these bushes provided a natural barrier which would prevent him from falling if he attempted to walk too far. On the day of the accident, however, and unbeknownst to Mr. Poyner, one of the bushes was missing, and there was thus nothing to restrain him from falling off the platform.

Mr. Poyner testified that as he was walking along the elevated area, he heard someone call "Billy!" from Connecticut Avenue. He turned his head to the right, but continued to walk forward to the location at the end of the platform where he thought that a bush would be. There was no bush, however, and Mr. Poyner fell, suffering personal injuries.

Mr. Poyner brought suit against several defendants, including the owners of the building, the property manager in charge of its maintenance, and the proprietor of Parklane Cleaners. After the parties had conducted discovery, the defendants moved for summary judgment, contending, *inter alia,* that Mr. Poyner had been contributorily negligent as a matter of law. The trial judge granted the motion, and she stated her reasons, in pertinent part, as follows:

> Here we have, while some facts are in dispute, no dispute as to what the court views as the really operative and important facts relating to how this incident occurred. Here we have a plaintiff who is partially visually impaired, legally blind, who can see some in front of him and gets about without the assistance of any mechanical or other disability aids.
>
> He was aware, as he was approaching this area to enter the cleaners, that he was on an elevated surface. He was not paying full attention, having been distracted by a call from someone out in the street. And according to the plaintiff's own testimony at his deposition, [he] continued to proceed forward and went over the edge into the lower—falling from the part where the bushes were, into the lower stairwell, and sustained injuries.
>
> Mr. Poyner's actions, in the court's judgment, clearly violate an objective reasonableness standard.... [N]o reasonable jurors could conclude that the plaintiff was not negligent when he continued to walk on an elevated surface with limited vision while his head was turned away from the direction of his travel in an area in which he was not very familiar.

## II.

In order to be entitled to summary judgment, the defendants were required to demonstrate that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. Super Ct. Civ. R. 56(c); *Colbert v. Georgetown Univ.,* 641 A.2d 469, 472 (D.C.1994) (en banc). In reviewing an order granting summary judgment, we must view the record in the light most favorable to the party opposing the motion. *Id.* Summary judgment is properly granted, however, where the record would not permit an impartial jury, acting reasonably, to return a verdict in the nonmoving

party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Ordinarily, questions of negligence and contributory negligence must be decided by the trier of fact. *Washington v. A. & H. Garcias Trash Hauling Co.,* 584 A.2d 544, 545 (D.C.1990). A party asserting the defense of contributory negligence is required to establish, by a preponderance of the evidence, that the plaintiff failed to exercise reasonable care. *Singer v. Doyle,* 236 A.2d 436, 438 (D.C.1967). "Only in the exceptional case is evidence so clear and unambiguous that contributory negligence should be found as a matter of law." *Tilghman v. Johnson,* 513 A.2d 1350, 1351 (D.C.1986) (citations omitted). The issue of contributory negligence should not be submitted to the jury, however, where the evidence, taken in the light most favorable to the plaintiff, establishes contributory negligence so clearly that no other inference can reasonably be drawn. *See District of Columbia v. Brown,* 589 A.2d 384, 387–88 (D.C.1991) (citations omitted).

The trial judge concluded that this was one of those rare cases in which contributory negligence—a defense with respect to which the defendants had the burden of proof—had been established as a matter of law. We agree. Indeed, we are satisfied, as was the trial judge, that Mr. Poyner's own testimony established that he did not exercise reasonable care and that his own contributory negligence proximately caused the accident.

It is undisputed that, at the time of the accident, a shrub at the end of the elevated platform was missing. A photograph which is a part of the record demonstrates that this was readily apparent, at least to any sighted person who chose to look. "[A] person must see what is reasonably there to be seen." *Jackson v. Schenick,* 174 A.2d 353, 355 (D.C.1961) (citation omitted). A plaintiff has not exercised due care if he has "failed either to look at all or to look observantly and see what should have been plainly visi-

ble." *Singer, supra,* 236 A.2d at 438.[1] In this case, Mr. Poyner acknowledged that his attention was distracted when someone called his name, and that he turned his head to the right, but continued to walk forward. At the critical moment, according to his own testimony, Mr. Poyner, who could see six to eight feet in front of him and was aware of his handicap, did not look where he was going. We agree with the trial judge that this constituted contributory negligence and that no impartial jury could reasonably find otherwise.

### III.

Mr. Poyner argues, however, that he is not a sighted person, and that "it is reasonable *for a legally blind person* ... as a response to his name being called, [to] turn towards the direction of his caller, reach for the handle and continue his step towards the door." (Emphasis added.) He claims that those actions "do not constitute contributory negligence." He contends, in other words, that on account of his visual impairment, his conduct should be tested against a different standard of care.

The parties have cited no authority on this issue, and we have found no applicable case law in the District of Columbia. The precedents in other jurisdictions, however, support affirmance of the trial court's order. "It seems to be the general rule that a blind or otherwise handicapped person, in using the public ways, must exercise for his own safety due care, or care commensurate with the known or reasonably foreseeable dangers. Due care is such care as an ordinarily prudent person with the same disability would exercise under the same or similar circumstances." *Cook v. City of Winston–Salem,* 241 N.C. 422, 85 S.E.2d 696, 700–01 (1955) (citing, *inter alia, Keith v. Worcester & Blackstone Valley St. Ry. Co.,* 196 Mass. 478, 82 N.E. 680 (1907)). As the court explained in *Keith,* however,

> it is also correct to say that in the exercise of common prudence one of defective eyesight must usually as a matter of general

---

1. *Singer* involved an automobile accident, but the point made by the court applies with equal force

to the situation before us.

knowledge take more care and employ keener watchfulness in walking upon the streets and avoiding obstructions than the same person with good eyesight, in order to reach the standard established by the law for all persons alike, whether they be weak or strong, sound or deficient.

*Id.,* 82 N.E. at 681; *see also Cook, supra,* 85 S.E.2d at 701 (quoting *Keith*).

In *Smith v. Sneller,* 345 Pa. 68, 26 A.2d 452 (1942), the Supreme Court of Pennsylvania considered a situation similar to the one before us, and its disposition is instructive. Sneller, a plumbing contractor, had removed a portion of the sidewalk and had dug a trench in order to make a sewer connection. On the north side of the trench, Sneller constructed a barricade. On the south side, however, Sneller simply left a pile of earth two feet high. The plaintiff, Smith, was walking north along the sidewalk towards the trench. As a result of defective eyesight, he failed to see the pile of earth. Mr. Smith fell into the trench, and sustained personal injuries. A jury returned a verdict in his favor.

The intermediate appellate court expressed sympathy for Mr. Smith "in his effort to make a living in spite of his physical handicap," but nevertheless felt constrained to reverse the decision and enter judgment n.o.v. in Sneller's favor. Smith appealed to the Pennsylvania Supreme Court, which affirmed the judgment. Noting that Mr. Smith's vision was so defective that he could not see a dangerous condition immediately in front of him, and that the accident could have been avoided if he had used "one of the common well-known compensatory devices for the blind, such as a cane, a 'seeing eye' dog, or a companion," the court concluded:

Plaintiff's conduct was not equal to the degree of care required of him. The Superior Court very properly said: "A blind man may not rely wholly upon his other senses to warn him of danger but must use the devices usually employed, to compensate for his blindness. Only by so doing can he go about with comparative safety to himself." We are in accord with that learned court, that plaintiff was guilty of contributory negligence as a matter of law,

and we must, therefore, affirm the judgment.

26 A.2d at 454.

The reasoning of the court in *Smith* applies equally to the present case. Here, as in *Smith,* the plaintiff was walking alone, and he did not use a guide dog or a cane. As a result, he fell from the walkway. Indeed, the evidence of contributory negligence is stronger here than in *Smith,* for Mr. Poyner, who could see six to eight feet in front of him, acknowledged that, at the moment that he fell, he was not looking where he was going.

In *Coker v. McDonald's Corp.,* 537 A.2d 549 (Del.Super.1987), the legally blind plaintiff was walking to the entrance of a McDonald's restaurant from the parking lot. Unlike the plaintiffs in *Smith* and in the present case, however, she was carrying a cane in her right hand, and she was holding on to a companion with her left hand. Ms. Coker lost her balance while attempting to navigate around an obstruction, and she sustained injuries. The defendant claimed that the obstruction was "open and obvious," and that the plaintiff was contributorily negligent as a matter of law. The court disagreed:

A blind person is not bound to discover *everything* which a person of normal vision would. He is bound to use due care under the circumstances. Due care for a blind person includes a reasonable effort to compensate for his unfortunate affliction by use of artificial aids for discovery of obstacles in his path. When an effort in this direction is made, it will ordinarily be a jury question whether or not such effort was a reasonable one.... [W]hat is an open and obvious condition to a blind person depends upon what, if any, tools or aids the blind person utilizes to discover the condition, and the degree to which such aids are used. The ordinary, prudent blind person who is reasonably using a cane, dog, or the guidance of her companions should discover open and obvious conditions to the extent these aids permit. Here, the plaintiff was using her cane and companions for guidance. Whether this attempt to compensate for her blindness was reasonable under the circumstances is a jury question.

*Id.* at 550–51 (emphasis in original) (citations and internal quotation marks omitted). Characterizing the issue presented as being whether Ms. Coker acted reasonably under the circumstances, the court concluded that "[w]here the blind plaintiff is not using any aid, ... as in *Smith v. Sneller, supra,* a court could rule as a matter of law that the plaintiff was contributorily negligent." *Id.* at 551. Because Ms. Coker was using two different aids, however—the cane and the companion—the question of contributory negligence was for the jury, and the defendant was not entitled to summary judgment. *Id.*

We agree with the analysis of the courts both in *Smith v. Sneller* and in *Coker.* Like the plaintiff in *Smith,* but unlike the plaintiff in *Coker,* Mr. Poyner was alone, and he used neither a cane nor a seeing eye dog. He also looked away at the critical moment. Under these circumstances, he was contributorily negligent as a matter of law, and summary judgment was properly granted.

*Affirmed.*